**Jack HARRIS, II, Plaintiff-Appellant,**

v.

**CITY OF ROSEBURG, municipal corporation, John Miller and Les Bergman, Defendants-Appellees.**

No. 80–3027.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 9, 1981.

Decided Dec. 28, 1981.

---

* The Honorable Byron G. Skelton, Senior Judge, United States Court of Claims, sitting by designation.

** *Knutson v. Daily Review, Inc.*, 383 F.Supp. 1346 (N.D.Cal.1974); *Knutson v. Daily Review, Inc.*, 401 F.Supp. 1374 (N.D.Cal.1975).

James A. Arneson, Arneson & Wales, Roseburg, Or., for plaintiff-appellant.

Robert E. Franz, Jr., Eugene, Or., for defendants-appellees.

Before SCHROEDER and NELSON, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge:

Defendant-appellee Bergman, a police officer of the City of Roseburg, was present at an illegal repossession by a creditor of a semi-tractor purchased under contract by plaintiff-appellant, Jack Harris. The district court granted summary judgment in favor of Bergman and the City of Roseburg, holding that Bergman could not be held liable for an alleged deprivation of appellant's constitutional rights under 42 U.S.C. § 1983, because the officer never had actual or constructive possession of the semi-tractor. Although we conclude that the court incorrectly interpreted § 1983, we affirm on the ground that Bergman was immune from liability because he acted in good faith and with a reasonable belief that his conduct was lawful.

---

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

## I. *Factual Background*

Harris purchased a semi-tractor on contract from Lee Cantwell, who retained a security interest. Harris was delinquent in his payments, and in December, 1977 Cantwell's attorney wrote Harris threatening to institute legal proceedings. Although Harris paid Cantwell $3,000 over the next four months, Cantwell decided to repossess the semi-tractor in April, 1978.

Fearing violence if he attempted to repossess the vehicle alone, Cantwell asked the Roseburg City Police Department to provide an officer to "stand-by" while Cantwell repossessed the vehicle. Cantwell had been informed by a repossession agency that he would violate the contract if the police participated in the repossession. He conveyed this information to Bergman, who responded by telling Cantwell that the police "could not participate in it, no way, shape or form." Officers Bergman and Miller of the Roseburg City Police accompanied Cantwell and his wife to Harris's residence. On the way, Bergman explained to Miller that Cantwell was repossessing a truck because of a default on a contract and that their duty was to stop a fight if one should occur.

At the Harris residence, the semi-tractor was parked on the street, attached to a trailer. Cantwell rolled down the landing gear in preparation for unhooking it. He then opened the door, got into the semi-tractor, and started the engine with a key he had with him. Mrs. Cantwell got into the tractor, sat behind the steering wheel, and kept the engine running while Cantwell disconnected the trailer. As Cantwell was standing in the gutter unhooking the brake hoses, Harris came out of his house and confronted him. Cantwell informed Harris that he was repossessing the tractor because Harris was behind in payments.

According to Harris, Bergman then stepped in and told Harris to "stand back or get away." In response to Harris's demand as to what was occurring, Bergman said that Cantwell was there to repossess the truck and that Bergman "came out to stand by." A verbal confrontation between Berg-man and Harris allegedly followed, with Bergman finally telling Cantwell to get the "papers" which showed that Cantwell had a right to repossess. Harris, fearing in his rage that he might assault Bergman, went back to his house. While he was in the house, the repossession was completed, and Cantwell was driving off with the semi-tractor as Harris came out a second time. The "papers" referred to by Bergman was a copy of the letter written by Cantwell's attorney to Harris in December of 1977.

## II. *Court Proceedings*

Harris brought a state court action against Cantwell for conversion of the semi-tractor, contending that Cantwell, by accepting late payments, had waived his right to strict enforcement of the contract and had breached the peace when he repossessed the vehicle with the assistance of the city police. The jury returned a verdict in favor of Harris which was affirmed by the Oregon Court of Appeals. *Harris v. Cantwell*, 47 Or.App. 211, 614 P.2d 124 (1980).

Harris then filed this action, alleging that Bergman, Miller and the City of Roseburg had violated 42 U.S.C. § 1983 and deprived Harris of his Fourteenth Amendment right to due process of law when they assisted Cantwell in the repossession. The parties stipulated that a United States magistrate could preside over all of the proceedings.

Following discovery all of the parties moved for summary judgment. The court denied plaintiff's motion, granted the motion of defendant Miller, held Bergman's motion in abeyance "until plaintiff has had an opportunity to further brief the legal issues," and denied the City of Roseburg's motion, with leave to renew its motion after further discovery.

In subsequent findings and recommendations the magistrate concluded that § 1983 is not violated unless there is a "taking" of property by the state, amounting to actual or constructive possession by its officers. Adopting the magistrate's recommendation, the court granted Bergman's motion for summary judgment. Subsequently the court granted summary judgment in favor

of the city, and final judgment was entered dismissing the action as to all of the defendants. Harris has appealed from this judgment, and claims error in the grant of summary judgment in favor of Bergman and the City of Roseburg.[1]

Three issues are presented on appeal: (1) whether the court erred in holding that a police officer cannot be liable under 42 U.S.C. § 1983 for a deprivation of property unless the officer acquired actual or constructive possession of the property; (2) whether Cantwell took possession of the tractor before Harris protested; and (3) whether Bergman and the City of Roseburg are entitled to summary judgment on the ground that there is no genuine issue as to any material fact that Bergman acted in good faith and with a reasonable belief that his conduct was lawful, and Bergman and the City accordingly were immune from liability under § 1983.

### III. *42 U.S.C. § 1983*

 Liability under § 1983 [2] can be established by showing that the defendants either personally participated in a deprivation of the plaintiff's rights, or caused such a deprivation to occur. *Arnold v. International Business Machines Corp.*, 637 F.2d 1350, 1355 (9 Cir. 1981).[3] The statute is violated when a person, acting under color of the power vested in him as a government officer, *proximately causes* a citizen of the United States to be deprived of any rights, privileges, or immunities secured by the Constitution or laws. *Id.* at 1355.[4] Two questions are therefore presented: (1) was the plaintiff deprived of a right, privilege or immunity secured by the Constitution or laws of the United States, and if so, (2) was the deprivation caused by the defendants while they were acting under color of state law?

 It is clear from *Sniadach v. Family Finance Corp. of Bay View*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) and *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), that a debtor has a right to minimal due process (i. e., notice and prior hearing) before a state may assist a secured creditor in repossessing the debtor's property. In addition, *Westerman v. Oregon Automobile Credit Corporation*, 168 Or. 216, 122 P.2d 435 (1942) [5] established three rules relating to the repossession of an automobile: (1) a creditor who has a right to immediate possession may retake the property if he can do so peaceably; [6] (2)

---

**1.** Harris does not argue on appeal that the court erred in granting summary judgment in favor of Officer Miller.

**2.** 42 U.S.C. § 1983 reads:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or *causes to be subjected*, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress. (Emphasis added).

**3.** See also *Johnson v. Duffy*, 588 F.2d 740, 743 (9 Cir. 1978), where the court said:

A person "subjects" another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made. (*Sims v. Adams* (5th Cir. 1976) 537 F.2d 829.) Moreover, personal participation is not the only predicate for section 1983 liability. Anyone who "causes" any citizen to be subjected to a constitutional deprivation is also liable.

**4.** As the court noted in *Arnold*, "The 'under color' of state law requirement of section 1983 is equivalent to the 'state action' requirement of the Fourteenth Amendment." 637 F.2d at 1355, n.2.

**5.** *Westerman* dealt with a secured creditor's repossession of an automobile. In the debtor's absence, the creditor's agents entered the car, which was parked on a public street, inserted a key in the ignition, and were prepared to drive it away. The debtor returned soon enough, however, to physically push the repossessors out of the car and to retain possession. In a resulting action for trespass, the court found that the repossession had been completed before the debtor objected and ruled against the debtor. 122 P.2d at 443.

**6.** *Westerman* specifically held that the creditor may not commit an assault, battery, or false imprisonment in the process of taking possession, and noted that securing the aid of a police

once he has done so, the creditor may use reasonable force to defend his possession; (3) "but if the buyer objects and protests against such retaking, and obstructs the seller in doing so, it is the duty of the seller to proceed no further in such attempted retaking, but to resort to legal process to enforce his right of repossession." 122 P.2d at 443. In its discussion of the third rule, the court noted:

> [I]f the buyer objects and protests and *obstructs* [emphasis in original] the seller it becomes the duty of the latter to desist. *If the mortgagor or conditional buyer resists and places his body in a position which obstructs the mortgagee or vendor so that in order to take the chattel he must necessarily apply force, however slight, to the person then he must desist and resort to legal process.*

*Id.* at 443. (Emphasis added.)

In *Stone Machinery Co. v. Kessler,* 1 Wash.App. 750, 463 P.2d 651 (1970), the Washington court applied Oregon law in an action to repossess a tractor, in which the defendant cross-complained for wrongful and malicious repossession. The creditor's agent, fearing violence, had requested the sheriff of Wallowa County, Oregon, to accompany him. The court held that the sheriff's conduct constituted direct participation [7] in the repossession and thereby rendered it illegal. In reaching this conclusion the court noted that the defendant had a right to obstruct, by all lawful and reasonable means, any attempt to forcibly repossess the tractor, and had the defendant offered any physical resistance both the sheriff and

plaintiff's agents had a duty to retreat. The court continued:

> However, confronted by the sheriff, who announced his intention to participate in the repossession, it was not necessary for Kessler to either threaten violence or offer physical resistance. As stated by the court in *Roberts v. Speck,* 169 Wash. 613, at 616, 14 P.2d 33 at 34 (1932), citing from Jones on Chattel Mortgages (4th ed.), § 705:

> The mortgagee becomes a trespasser by going upon the premises of the mortgagor, accompanied by a deputy sheriff who has no legal process, but claims to act *colore officii,* and taking possession without the active resistance of the mortgagor. To obtain possession under such a show and pretence of authority is to trifle with the obedience of citizens to the law and its officers.

463 P.2d at 654.

In *United States v. Coleman,* 628 F.2d 961, 964 (6 Cir. 1980), two police officers were parked nearby, while a creditor's agent repossessed a truck. The court held that "mere acquiescence by the police to 'stand by in case of trouble' was insufficient to convert the repossession of the truck into state action." [8] In *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 513 (5 Cir. 1980), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980), the court recognized that "police intervention and aid in [a] . . . repossession . . . would constitute state action. . . ." In that case, however, there was less involvement by the police officers than in the instant case, and the majority opinion

---

officer who pretends to act colore officii has been held to be an "equivalent of force" in some jurisdictions. 122 P.2d at 441.

**7.** The sheriff and plaintiff's agent had walked to the edge of a river and motioned the defendant, who was working on the tractor, to bring it to shore. The sheriff was in uniform and wearing his badge and sidearms. The sheriff informed the defendant that the plaintiff had a right to repossess the tractor, and stated, "We come to pick up the tractor." The defendant asked the sheriff if he had proper papers to take the tractor and the sheriff replied, "No." The defendant protested and objected to the taking of the tractor but offered no physical

resistance because, as he testified "he didn't think he had to disregard an order of the sheriff." 463 P.2d at 652–53.

**8.** The court distinguished *Stone Machinery v. Kessler, supra,* and *Walker v. Walthall,* 121 Ariz. 121, 588 P.2d 863 (1978), on the ground that in those cases "the local police accompanied the repossessor to the debtor's residence, and together with the repossessor, confronted the debtor in order to effectuate the repossession. The affirmative participation by the police sets those cases apart from the passive surveillance of the police here." 628 F.2d at 964, n. 1.

held that there was not sufficient intervention and aid to constitute state action.

Bergman argues that he was present only as a "stand-by" to prevent violence and that his conduct falls short of the active participation condemned in *Stone Machinery* and similar cases. The plaintiff in *Stone Machinery* had contended "that its sole purpose in having the sheriff present was to prevent anticipated violence." The court concluded, however, that the effect "was to prevent the defendant Kessler from exercising his right to resist by all lawful and reasonable means a nonjudicial takeover." 463 P.2d at 655.

While it is true that Bergman did not participate as actively in the repossession as the sheriff did in *Stone Machinery*, there is substantial evidence in Harris's deposition that the effect of Bergman's presence was to prevent Harris from resisting the repossession. Harris testified, *inter alia*, that when he came out of the house and saw someone unhooking the hoses, he "let out a roar to get the _____ away from my truck, whoever was unhooking it;" that before he could get to Cantwell "Officer Bergman came between me and the truck and not quite between me and Mr. Cantwell" and told me "to stand back or get away;" that Harris told Cantwell "to get away from my truck;" that Bergman told Harris that if he "interfered either any further or in any way that I was going straight to jail;" that if the police officers had not been there, "Lee would not have taken the truck;" and that Harris would have physically resisted his doing so.

■ We conclude that there may be a deprivation within the meaning of § 1983 not only when there has been an actual "taking" of property by a police officer, but also when the officer assists in effectuating a repossession over the objection of a debtor or so intimidates a debtor as to cause him to refrain from exercising his legal right to resist a repossession. While mere acquiescence by the police to "stand by in case of trouble" is insufficient to convert a repossession into state action, police intervention and aid in the repossession does constitute state action. Harris' deposition raises factual questions which preclude summary judgment on this issue.

### IV. *Possession*

■ Bergman contends that Cantwell had taken possession of the semi-tractor without force before Harris appeared to protest. We agree with the Oregon court "that there was a question of fact for the jury regarding when defendant [Cantwell] took possession of the tractor in relationship to the confrontation with plaintiff [Harris]." *Harris v. Cantwell, supra*, 614 P.2d at 126.

### V. *Good Faith Immunity*

Appellees also contended in the district court that Officer Bergman was entitled to summary judgment for the reason that he was immune from liability because the record showed that as a matter of law he acted in good faith and with a reasonable belief in the validity of his conduct. Having concluded that there was no evidence of an unjustified taking which would support a § 1983 action, the district court did not reach the immunity issue. This court has held, however, that it is proper "to affirm a summary judgment on any ground that appears from the record, whether or not the trial court relied on it." *Helena Rubinstein, Inc. v. Bau*, 433 F.2d 1021, 1023 (9 Cir. 1970).

The defense of good faith was extended to police officers in a § 1983 action in *Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967). In *Wood v. Strickland*, 420 U.S. 308, 321–22, 95 S.Ct. 992, 1000–1001, 43 L.Ed.2d 214 (1975), the Court held that the qualified immunity granted to public officials requires elements of both "objective" and "subjective" good faith. This standard of good faith was applied in *Procunier v. Navarette*, 434 U.S. 555, 562–66, 98 S.Ct. 855, 859–862, 55 L.Ed.2d 24 (1978), where the district court had granted summary judgment on the basis of qualified immunity in favor of state prison officials in a § 1983 action alleging interference with prisoners' outgoing mail.

The Court held that the court of appeals erred in reversing the summary judgment and that the prison officials were entitled to immunity unless they "knew or reasonably should have known" that the action taken with respect to a prisoner's mail would violate his federal constitutional rights or that the action had been taken with the "malicious intention" to cause a deprivation of constitutional rights or other injury. *Id.* at 561–62,[9] 98 S.Ct. at 859–860.

This court has consistently followed the rule stated in *Mark v. Groff,* 521 F.2d 1376, 1379–80 (9 Cir. 1975), following an analysis of prior Supreme Court decisions, including *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974):

> Under the qualified immunity doctrine, a government officer performing acts in the course of official conduct is insulated from damage suits only if (1) at the time and in light of all the circumstances there existed reasonable grounds for the belief that the action was appropriate *and* (2) the officer acted in good faith. (footnote omitted) (emphasis in original)[10]

■ In order to claim this immunity, Bergman must show that (1) he was acting sincerely and with the belief that he was doing right, not knowing that his official action would violate Harris's constitutional rights (subjective good faith); and (2) he should not reasonably have known that his official action would violate those rights (objective good faith). *Wood,* 420 U.S. at 321–22, 95 S.Ct. at 1000–1001.

■ Referring first to the objective standard, Bergman cannot be "charged with predicting the future course of constitutional law," *Pierson v. Ray,* 386 U.S. at 557, 87 S.Ct. at 1219; quoted with approval in *Wood v. Strickland,* 420 U.S. at 322, 95 S.Ct. at 1001. It is argued that Bergman should have understood *Westerman* and *Stone Machinery Co.,* which did not arise under § 1983, to establish rights in Harris which Bergman violated during the repossession. It would be unfair, however, to hold Bergman to such an interpretation of § 1983 and those cases when a United States magistrate and district judge interpreted them otherwise. We therefore hold that officer Bergman acted with objective good faith.

Harris contests Bergman's subjective good faith and argues that he acted maliciously or in reckless disregard of appellant's constitutional rights. Harris points out that Bergman admitted in his deposition that (1) the paper presented to him by Cantwell was not a court order or document, (2) Bergman knew that the appellant might resist repossession, and (3) he didn't look for a date to determine when the alleged default had occurred. Further, Harris alleged that Bergman threatened to

**9.** The Court said in part:

> Under the first part of the *Wood v. Strickland* rule, the immunity defense would be unavailing to petitioners if the constitutional right allegedly infringed by them was clearly established at the time of their challenged conduct, if they knew or should have known of that right and if they knew or should have known that their conduct violated the constitutional norm.
>
> 434 U.S. at 562, 98 S.Ct. at 860.
>
> ... As a matter of law, therefore, there is no basis for rejecting the immunity defense on the ground that petitioners knew or should have known that their alleged conduct violated a constitutional right. Because they could not reasonably have been expected to be aware of a constitutional right that had not yet been declared, petitioners did not act with such disregard for the established law that their conduct "cannot reasonably be characterized as being in good faith." *Wood*

> *v. Strickland,* 420 U.S. at 322 [95 S.Ct. at 1001].
>
> *Id.* at 565, 98 S.Ct. at 861.
>
> Neither should petitioners' immunity defense be overruled under the second branch of the *Wood v. Strickland* standard, which would authorize liability where the official has acted with "malicious intention" to deprive the plaintiff of a constitutional right or to cause him "other injury." This part of the rule speaks of "intentional injury," contemplating that the actor intends the consequences of his conduct. See Restatement (Second) of Torts, § 8A (1965).
>
> *Id.* at 566, 98 S.Ct. at 862.

**10.** See also *Midwest Growers Co-op. Corp. v. Kirkemo,* 533 F.2d 455, 463–64 (9 Cir. 1976); *Walker v. Hoffman,* 583 F.2d 1073, 1074–75 (9 Cir. 1978), *cert. denied,* 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979).

have him incarcerated if he interfered in any way with the repossession and answered his question with a "sadistic smile on his face."

From our review of the record as a whole, we are satisfied that appellant has failed to set forth specific facts showing a genuine issue for trial with respect to Bergman's good faith and reasonable belief that his conduct was lawful. Bergman's motion for summary judgment was supported by a memorandum and seven exhibits—depositions of Harris, Lee Cantwell, Gloria Cantwell, Bergman and Miller, and affidavits of Bergman and Miller. No counter-affidavits or other evidence were presented by appellant.

Bergman states in his affidavit that he "sincerely and honestly believe[d] that [his] actions and conduct . . . were lawful and constitutional"; that he felt that it was his "duty as a police officer to prevent any violence after being notified . . . that such violence could occur." Bergman stated further that prior to April 15, 1978 he had never been involved in this type of repossession situation; that he had been involved in marital controversies where he was requested to "stand by to make sure no violence occurred" while one spouse removed her personal possessions from the home and had been advised that in these situations his conduct was proper and lawful. He had never been advised that conduct such as occurred in this case violated the constitutional rights of any person in appellant's position.

While Bergman's affidavit is obviously a self-serving statement, it is supported by facts set forth in all of the depositions. Bergman himself testified that he explained to Harris that "it was a standby situation, that we were there in case a fight broke out"; and if there were a fight then "someone would have to go to jail for disorderly conduct, something of that nature." Cant-well testified that Bergman had told him the police officers "could go along and stand by, but they could not participate in the actual repossession of the truck." Cantwell's deposition otherwise corroborated Bergman's testimony, as did Miller's deposition and affidavit.

Harris testified in his deposition that when he told Cantwell to get away from his truck, he said it "very violently and angry"; that he was "really mad" and "started to go toward the truck or follow Cantwell" when Bergman told him that if he interfered further he was going to jail; that his mind "flashed red" and he was "on the verge of decking Bergman" when he realized that was a "stupid thing to do" and he "just gritted [his] teeth and went in the house to cool off." Harris admitted in his deposition that Bergman told him that he "was there to insure that there was no violence." As noted above, Harris also testified that if the police had not been there, he would have physically resisted the repossession.[11]

No physical altercation took place. There is no evidence that either of the police officers ever shoved, struck or even touched Harris. Nor is there any evidence that the police officers directly assisted in the actual repossession of the tractor. While their mere presence on a standby basis to prevent violence and telling Harris to "stand back or get away" may have had a causal connection with the illegal repossession, this would not preclude an immunity defense of good faith.

We recognize that good faith is an affirmative defense which must be proved by the police officer. *Kipps v. Ewell*, 538 F.2d 564, 566 (4 Cir. 1976). Summary judgment may still be granted, however, "if pleadings and affidavits show there is no genuine issue as to any material fact. . . ." *Id.* "The non-movant has an affirmative duty to come forward to meet a properly

---

11. It is clear from all of the depositions, but particularly Harris's, that Harris was very angry and on the verge of violence. He threatened both Cantwell and the police officers, using profane and obscene language. It appears from the evidence that the police officers were simply doing what they reasonably considered necessary under the circumstances to avoid violence. We find no evidence of "malicious conduct" or reckless disregard of appellant's constitutional rights.

supported motion for summary judgment...." *Walker v. Hoffman*, 583 F.2d at 1075; *Kipps*, 538 F.2d at 566. As in *Midwest Growers Co-op. Corp. v. Kirkemo*, 533 F.2d at 464, we find that the affidavits and depositions set forth facts, which, if accepted, would entitle Bergman to summary judgment. With respect to Bergman's good faith defense, plaintiff has not raised any triable issues of fact as to whether Bergman reasonably believed that his actions were proper. We therefore affirm the district court's decision on the ground that, under Fed.R.Civ.P. 56(c) and (e), there was no genuine issue of material fact as to Bergman's good faith and that he was immune from liability for his conduct in the repossession.

### VI. *Liability of City of Roseburg*

In *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that

> a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.

*Id.* at 691, 98 S.Ct. at 2036. (emphasis in original).

. . . . .

> We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694, 98 S.Ct. at 2037–2038.

"Official policy" within the meaning of *Monell* has been found where a municipality "impliedly or tacitly authorized, approved or encouraged" illegal conduct by its police officers. *Turpin v. Mailet*, 619 F.2d 196, 201 (2 Cir. 1980), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980). As was noted in *Menchaca v. Chrysler Credit Corp.*, *supra*, 613 F.2d at 509, n. 1, however, "under *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the City ... could not be vicariously liable since there was no governmental custom, plan or scheme to provide official assistance or aid in the repossession of automobiles by private parties pursuant to their private contractual arrangements."

Harris alleged in his complaint that at all times material to this action, Bergman and Miller were acting "pursuant to a policy or custom of defendant City of Roseburg of assisting creditors in depriving debtors of personal property without a court order or providing an opportunity for the debtor to be heard." Harris offered no evidence, however, of an official policy of the City of Roseburg which would make the city liable under § 1983. Rather, he based his allegations against the City entirely on the actions of Officers Bergman and Miller. Since we affirm the summary judgment in favor of the officers, we also affirm the summary judgment in favor of the City of Roseburg.

AFFIRMED.