32 F.3d 989
 HAVERSTICK ENTERPRISES, INC. (d/b/a North American Equipment
Company); James Haverstick; and Glenn Belcher,
Plaintiffs-Appellants/Cross-Appellees,
v.
FINANCIAL FEDERAL CREDIT, INC., et al., Defendants,
City of Romulus; and City of Romulus Police Department,
Defendants-Appellees/Cross-Appellants.
 Nos. 92-2280, 92-2351.
 United States Court of Appeals,
Sixth Circuit.
 Submitted May 12, 1994.
Decided Aug. 19, 1994.
 
 Haverstick Enterprises, Inc., James E. Haverstick, President (Briefed), Westland, MI, for Haverstick Enterprises, Inc. d/b/a North American Equipment Co. and James E. Haverstick, Individually and as President of Haverstick Enterprises, Inc., pro se.
 Glenn Belcher (Briefed), pro se.
 Sheryl L. Toby and Malcolm B. Campbell, Honigman, Miller, Schwartz & Cohn, Detroit, MI, for Financial Federal Credit, Inc., an Illinois Corp. and Thomas Fahl, individually and in his representative capacity as Regional Sales Manager for Financial Federal Credit, Inc.
 Gail P. Massad (briefed), Edward E. Salah, and Marcia L. Howe, Cummings, McClorey, Davis & Acho, Livonia, MI, for City of Romulus, a Mun. Corp. and Romulus Police Dept.
 Before: RYAN and NORRIS, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.
 KRUPANSKY, Senior Circuit Judge.
 
 
 1
 This action has asserted alleged violations of federal constitutional rights, perpetrated by private individuals and by a state officer, purportedly actionable under congressional civil rights enactments. Plaintiffs Haverstick Enterprises, Inc. (d/b/a North American Equipment Company) ("H.E.I."), James E. Haverstick ("Haverstick"), and Glenn Belcher ("Belcher") complained that a private repossession effected under Michigan law by defendant Financial Federal Credit, Inc. ("F.F.C.I."), a secured creditor of H.E.I., with the assistance of defendants the City of Romulus, Michigan ("the City"), the City of Romulus Police Department ("the Department"),[1] and John Doe, a Romulus police officer, offended their rights under the Constitution of the United States. The plaintiffs urged that these infringements comprised actionable wrongs under 42 U.S.C. Secs. 1983, 1985(3), and 1986. The plaintiffs on appeal challenged the district court's dismissal of all federal civil rights claims against the municipal defendants via a grant of summary judgment. The municipal defendants cross-appealed the trial court's denial of sanctions against the plaintiffs under Federal Rule of Civil Procedure 11. See Haverstick Enterprises v. Financial Fed. Credit, 803 F.Supp. 1251 (E.D.Mich.1992).
 
 
 2
 At all relevant times, H.E.I. engaged in the business of customizing trucks for resale to customers engaged in heavy construction. On December 7, 1989, it purchased a 1989 International Truck Model F-2275 from a dealership. Defendant F.F.C.I. financed this acquisition through an installment sales contract which transferred H.E.I.'s equity interest in the machinery to F.F.C.I. as collateral for the loan. H.E.I. integrated an NRC Industries Model WL 25 ton Hydraulic Twin Line Wrecker into the unit, which allegedly added approximately $50,000 to the truck's value.
 
 
 3
 During subsequent months, H.E.I. defaulted under the loan agreement. Ultimately, F.F.C.I. elected to employ the Michigan "self-help" statute, M.C.L.A. Sec. 440.9503 (West 1967 & Supp.1994), by which the state legislature empowered secured creditors to nonjudicially seize collateral upon dishonor of a security agreement as long as the repossession could be achieved peacefully.[2] On December 20, 1990, F.F.C.I.'s Regional Sales Manager, defendant Thomas Fahl, arrived at the H.E.I. business premises accompanied by another F.F.C.I. employee, with the intention of confiscating the wrecker. The two men rendezvoused with Officer John Hlinak of the Romulus Police Department, who the Department dispatched on "civil standby" to the scene pursuant to Fahl's request. Officer Hlinak ostensibly attended the private seizure as an observer to ensure that it transpired in an orderly, peaceful, and lawful manner as directed by M.C.L.A. Sec. 440.9503.
 
 
 4
 Upon arriving at the H.E.I. premises the defendants observed the wrecker inside a fenced area enclosed by an unlocked gate. After a brief conversation with Fahl and Hlinak, plaintiff Glenn Belcher, who tended the H.E.I. office and garage on that day, locked the gate to the enclosure and secured himself inside the H.E.I. office. While Hlinak attempted to attract Belcher's attention by tapping on the office window, the F.F.C.I. agents commandeered the wrecker and drove it through the locked gate onto the public street.
 
 
 5
 In response, Belcher quit his fortified position and approached his automobile with the intent of pursuing the errant wrecker and aborting the incipient repossession. At this point, Officer Hlinak briefly questioned Belcher to obtain identification necessary for incorporation into his official report. Belcher produced his driver's license, which the policeman promptly returned after recording the necessary information. Although conflict existed in the testimony respecting certain particulars of the short interrogation, Belcher attested that the detention lasted no longer than five minutes, that he was not taken into custody, searched, or charged, and that he at all times felt at liberty to walk away from the patrolman.
 
 
 6
 The plaintiffs initiated an eight-count legal action in state court on September 30, 1991, which articulated six state claims anchored in Michigan law plus two causes of action which arose under federal law. Count Two alleged a conspiracy by the defendants to deprive the plaintiffs of their equal protection and due process rights actionable by virtue of 42 U.S.C. Secs. 1985(3) and 1986. Count Six averred violation of the appellants' equal protection and due process rights by the City, the Department, and John Doe pursuant to 42 U.S.C. Sec. 1983. The defendants removed the case to the United States District Court, Eastern District of Michigan, on December 13, 1991.
 
 
 7
 After a hearing conducted on September 2, 1992, the district court entered summary judgment in favor of the defendants on all federal civil rights claims, denied the plaintiffs' oral motion to amend the complaint to substitute Hlinak for Doe as moot, and remanded the pendent state causes of action to the Michigan state courts. The district judge also denied the non-Doe defendants' motion for sanctions. Haverstick, supra. The plaintiffs have appealed the summary dismissal of their federal civil rights claims against the municipal defendants and the refusal of the trial court to permit the amendment to join Hlinak as a party defendant, and have also asserted a motion before the appellate panel for remand to the lower court for inclusion of a Fourth Amendment unreasonable seizure of property claim. The municipal defendants have cross-appealed the district judge's disallowance of Rule 11 sanctions against the plaintiffs.
 
 
 8
 Under Federal Rule of Civil Procedure 56(c), "[t]he [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." On summary judgment motions, all reasonable inferences drawn from the evidence must be viewed in the light most favorable to the parties opposing the motion. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " Id. [citation omitted].
 
 
 9
 Summary judgment must be entered against a party who failed to provide sufficient evidence in support of an essential element of that party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The appellate court must review de novo the summary dismissal of the plaintiffs' federal civil rights claims in this case. Hansard v. Barrett, 980 F.2d 1059, 1061 (6th Cir.1992).
 
 
 10
 Initially this panel considers the substance of the plaintiffs' civil rights causes of action under 42 U.S.C. Sec. 1985(3), which addresses conspiracies committed by private actors. Griffin v. Breckenridge, 403 U.S. 88, 101, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); Bray v. Alexandria Women's Health Clinic, --- U.S. ----, ----, 113 S.Ct. 753, 758, 122 L.Ed.2d 34 (1993). Griffin postulated four elements necessary to support a cause of action for a conspiracy under Sec. 1985(3):
 
 
 11
 To come within the legislation a complaint must allege that the defendants did (1) "conspire or go in disguise on the highway or on the premises of another" (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." It must then assert that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States." Griffin, supra, 403 U.S. at 102-03, 91 S.Ct. at 1798-89.
 
 
 12
 The first element of the test having been satisfied, this court next assesses the plaintiffs' compliance with the second Supreme Court dictate of a section 1985(3) conspiracy, namely that they must prove that the conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus[.]" United Brotherhood of Carpenters and Joiners of America v. Scott, 463 U.S. 825, 829, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983). A class protected by section 1985(3) must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender. Hicks v. Resolution Trust Corporation, 970 F.2d 378, 382 (7th Cir.1992).
 
 
 13
 The plaintiffs have failed to allege in their complaint any race-based, ethnic-animated, or gender-motivated animus by the defendants against the plaintiffs. The plaintiffs argue that Belcher's physical impediments[3] implicate that his treatment by the defendants during the period here in question was prompted by the defendants' prejudice and hostility towards the handicapped. No existing legal precedent supports the plaintiffs' argument. See Haverstick, supra, 803 F.Supp. at 1259.
 
 
 14
 Because no evidence in the record has created an inference that the defendants' actions were motivated to any degree by an animus against the handicapped, plaintiffs' charges are misconceived. Belcher merely happened to be the H.E.I. attendant on duty on the day of the incident. The F.F.C.I. employees came to H.E.I.'s premises with the purpose of conducting a lawful foreclosure upon collateral, not with the intent of harassing a physically disadvantaged individual. The evidence reflected that all actions taken by the private defendants were designed to effect the repossession of the truck in controversy. Officer Hlinak attended the seizure to monitor a peaceful and lawful foreclosure; neither his presence at, nor his conduct during, the confrontation was directed towards furtherance of any conspiratorial abuse of the rights of a member of a class hypothetically protected by section 1985(3). The district court correctly dismissed the section 1985(3) cause of action by entry of summary judgment. See 803 F.Supp. at 1259-60.
 
 
 15
 Accordingly, the dependent section 1986 cause of action must also fail. "Section 1986 is designed to punish those who aid and abet violations of Sec. 1985. We find no violation of Sec. 1985. Accordingly, there can be no violation of Sec. 1986." Browder v. Tipton, 630 F.2d 1149, 1155 (6th Cir.1980). Consequently, the district court properly dismissed the section 1986 claim against all defendants. See 803 F.Supp. at 1260.
 
 
 16
 In considering the plaintiffs' section 1983 causes of action, this panel initially considers the qualified immunity defense advanced by the defendants to determine if it is dispositive of that issue. The affirmative defense of qualified immunity provides that:
 
 
 17
 government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).
 
 
 18
 Accord, Buckley v. Fitzsimmons, --- U.S. ----, ----, 113 S.Ct. 2606, 2613, 125 L.Ed.2d 209 (1993); Hutsell v. Sayre, 5 F.3d 996, 1003 (6th Cir.1993).
 
 
 19
 In performing the qualified immunity analysis, the court must initially determine if a plaintiff possessed a constitutional right that had been invaded. Megenity v. Stenger, 27 F.3d 1120, 1123-24 (6th Cir.1994). In the pending case, H.E.I. enjoyed a clearly established right not to have property in which it enjoyed a lawful possessory interest seized[4] by state action in violation of the constitution. See, e.g., Tulsa Professional Collection Services v. Pope, 485 U.S. 478, 485-86, 108 S.Ct. 1340, 1345, 99 L.Ed.2d 565 (1988).
 
 
 20
 Having concluded that the first requirement was satisfied, the court next must decide if the state actor was aware, or reasonably should have been aware, that his conduct infringed that constitutional right:
 
 
 21
 However, if a court concludes after making the initial analysis that a defendant is guilty of violating a legal right possessed by the plaintiff, we then look to see whether a reasonable public official would have been aware that his conduct violates the right in question. If we conclude that a reasonable public official would not have been aware that he was committing a violation, we then afford immunity. Megenity, supra, at 1124.
 
 
 22
 Construing the evidence on summary judgment most favorably for the plaintiffs, it nonetheless cannot be said that Hlinak knew or reasonably should have known that his actions or failure to act translated into participation in the private foreclosure to a degree tantamount to state action. His presence at the site was intended to observe and monitor a peaceful statutory repossession of personal property. His language and conduct in addressing Belcher while the F.F.C.I. employees effected the foreclosure demonstrated objective good faith actions not inconsistent with his assigned duties of viewing a statutorily permitted repossession of property. See Harris v. City of Roseburg, 664 F.2d 1121, 1127-30 (9th Cir.1981) (qualified immunity protects a police officer assigned to act as a "civil standby" in monitoring a private repossession where a reasonable officer in his position would not have known that his actions constituted invalid participation in the taking).[5]
 
 
 23
 After the genesis of the instant appeal, the Supreme Court unanimously decided Soldal v. Cook County, Ill., --- U.S. ----, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992), which, inter alia, further clarified the distinction between conduct by law enforcement officers which comprised actual participation in a seizure of private property and actions which respected the bounds of mere "civil standby" involvement. Prior cases similarly distinguished between conduct designed to keep the peace and activity fashioned to assist in the repossession. With reference to such precedents, an officer in Hlinak's situation may have reasonably concluded that his deeds fit solely into the former category.[6] See, e.g., United States v. Coleman, 628 F.2d 961, 964 (6th Cir.1980) (a mere standby by police officers during a private repossession, without actual official facilitation of the seizure, accomplished in the absence of official compulsion to effect the seizure, was insufficient to convert the private foreclosure into state action); Menchaca v. Chrysler Credit Corp., 613 F.2d 507 (5th Cir.), cert. denied, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980) (a threat by police officers dispatched to the scene of a private repossession to arrest the owner of property in the process of foreclosure unless the owner desisted the use of loud and abusive language did not constitute official participation in the repossession).
 
 
 24
 The qualified immunity defense may be proved as a matter of law on summary judgment.[7] Harlow, supra, 457 U.S. at 818, 102 S.Ct. at 2738. For the reasons aforesaid the district court's summary judgment on the section 1983 claims of H.E.I. and Haverstick against Hlinak is hereby affirmed. Because qualified immunity precludes the imposition of any section 1983 liability against Hlinak for his alleged involvement in the seizure of the truck at issue, the plaintiffs' motion for remand to amend their complaint to include Fourth Amendment claims under section 1983 is hereby denied as futile.[8]
 
 
 25
 Turning to the Sec. 1983 claims asserted by plaintiff Belcher against Hlinak and the municipal defendants, the trial court correctly ruled that the only section 1983 rights which Belcher could assert arose from his constitutional interest in security against deprivation of liberty. The district court further, and correctly, directed that no deprivation of Belcher's liberty without due process under the Fourteenth Amendment occurred in this case. Haverstick, supra, 803 F.Supp. at 1258. Cases in which a citizen has alleged that a police officer has used excessive force in effecting an arrest, or unreasonably "seized" the person,[9] are assessed under the Fourth Amendment "objective reasonableness" standard, rather than a substantive due process standard.[10] Graham v. Connor, 490 U.S. 386, 388, 109 S.Ct. 1865, 1867-68, 104 L.Ed.2d 443 (1989); see also Albright v. Oliver, --- U.S. ----, ---- - ----, 114 S.Ct. 807, 813-14, 127 L.Ed.2d 114 (1994) (plurality opinion of four Justices, with two additional Justices concurring in the judgment).
 
 
 26
 Applying the Supreme Court's dictates to the instant case and indulging every factual inference in Belcher's favor, the evidence disclosed that Hlinak briefly questioned Belcher while acting under color of state authority. However, the record lacked sufficient evidence to prove that this alleged "seizure," or any associated conduct, by the officer was objectively unreasonable. Hlinak had a legitimate reason for questioning Belcher--to gather information for his official report. The stop consumed, at most, only five minutes and was not otherwise unduly intrusive. Hlinak returned the subject's license promptly. No force, let alone excessive force, was used.
 
 
 27
 In short, no constitutional right of Belcher's was transgressed by Hlinak's actions. Because the essential element of a constitutional violation was absent, Belcher could support no claim under section 1983 against Hlinak or the municipal defendants. Summary judgment was appropriately awarded against Belcher on his section 1983 claim. Moreover, because no successful civil rights claim could be asserted by any plaintiff in this case against Hlinak, this panel affirms the district judge's denial of the plaintiffs' motion for leave to amend the complaint to substitute Hlinak as a party defendant in place of Doe.
 
 
 28
 Finally, this court affirms the lower court's decision not to impose Rule 11 sanctions against the plaintiffs. Even under the pre-1993 amendment language of Federal Rule of Civil Procedure 11, which controlled this litigation, trial judges had discretion to award or deny sanctions, which decision was reviewable for abuse of discretion.[11] Danvers v. Danvers, 959 F.2d 601, 604-05 (6th Cir.1992) (per curiam ). The district judge's rejection of the sanctions motion for the reasons given by her did not constitute an abuse of discretion. See Haverstick, supra, 803 F.Supp. at 1260-61.
 
 
 29
 Accordingly, the judgment of the district court is hereby AFFIRMED.
 
 
 
 [1]
 The City of Romulus and the City of Romulus Police Department are sometimes collectively referred to hereinbelow as the "municipal defendants."
 At the outset, this court affirms summary judgment in favor of the Romulus Police Department on all counts for technical and procedural reasons. Under the law of Michigan, a municipal police department is a creature of the municipality. M.C.L.A. Sec. 92.1 (West 1991). A suit against a city police department in Michigan is one against the city itself, because the city is the real party in interest. See Moomey v. City of Holland, 490 F.Supp. 188, 190 (W.D.Mich.1980); see also Michonski v. City of Detroit, 162 Mich.App. 485, 413 N.W.2d 438, 441 (1987).
 
 
 [2]
 Section 440.9503 recites in pertinent part:
 Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action.
 
 
 [3]
 Belcher suffered an unfortunate birth deformity which rendered his arms permanently and abnormally withered
 
 
 [4]
 "A 'seizure' of property, we have explained, occurs when 'there is some meaningful interference with an individual's possessory interests in that property.' " Soldal v. Cook County, Ill., --- U.S. ----, ----, 113 S.Ct. 538, 543, 121 L.Ed.2d 450 (1992), quoting United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984)
 
 
 [5]
 The district court correctly noted that although Harris was pronounced in accord with pre-Harlow law, it remains good authority because the result would be the same under Harlow, supra, which emphasized the objective reasonableness of the officer's belief in the propriety of his or her conduct as opposed to a subjective good faith belief on the part of the individual officer. Haverstick, supra, 803 F.Supp. at 1258 n. 4
 The district judge supported her qualified immunity ruling with the following findings:
 Officer Hlinak, if named as a defendant in this action, would be immune from liability as was the officer in Harris. Officer Hlinak was present at the repossession on "civil standby." He was there to keep the peace. Officer Hlinak merely stopped Mr. Belcher and requested his driver's license. Id. at 1258.
 
 
 [6]
 Indeed, Hlinak swore in an affidavit that "the 1989 International wrecker was repossessed without any assistance by myself." J.App. at 134
 
 
 [7]
 In all cases, a lower court's application of the qualified immunity doctrine constitutes a pure issue of law which is reviewed de novo. Hutsell, supra, 5 F.3d at 1003; Henry v. Metropolitan Sewer Dist., 922 F.2d 332, 339 (6th Cir.1990)
 
 
 [8]
 Incorporation of a Fourth Amendment claim under section 1983 against the municipal defendants would be equally pointless. It is true that exoneration of a public employee from damages exposure by qualified immunity does not automatically insulate a public entity from section 1983 liability for constitutional wrongs flowing from its agent's conduct. Owen v. City of Independence, Mo., 445 U.S. 622, 638 & n. 18, 100 S.Ct. 1398, 1409 & n. 18, 63 L.Ed.2d 673 (1980); Leatherman v. Tarrant County Narcotics Unit, --- U.S. ----, ----, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993). However, section 1983 actions against municipalities carry certain special elements, including proof (1) that the City pursued an official custom or policy of failing to adequately train, supervise, or discipline its officers in a particular matter, and (2) that such official policy or custom was adopted by the official makers of policy with "deliberate indifference" towards the constitutional rights of persons affected by the policy or custom. City of Canton v. Harris, 489 U.S. 378, 387-88, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). Despite ample time for discovery, the record below was devoid of any evidence which might support these required findings. Therefor, summary judgment in favor of the City and the Department on the section 1983 cause of action was mandatory, irrespective of which constitutional right was allegedly violated by Hlinak's actions
 
 
 [9]
 See Tennessee v. Garner, 471 U.S. 1, 7, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985) ("Whenever an officer restrains the freedom of a person to walk away, he had seized that person.")
 
 
 [10]
 Under Nishiyama v. Dickson County, Tenn., 814 F.2d 277 (6th Cir.1987) (en banc), substantive due process rights under the Fourteenth Amendment are violated when the state actor behaved with "gross negligence," "wanton disregard," or "reckless indifference" to the rights of the injured person. Id. at 282-83
 
 
 [11]
 Rule 11, as amended effective August 1, 1987, pronounced that the court shall impose a sanction if a signed, submitted paper violated the rule. Rule 11, as amended effective December 1, 1993, provides that the court may impose a sanction for such an offense