**Richard J. BREES, husband; Marie Brees, wife, Plaintiffs–Appellants,**

v.

**COURTESY FORD, INC., a Washington State corporation; Hide N Seek Investigations, Inc., a Washington State corporation; Michael Stringer, a Jefferson City Deputy Sheriff; Scott**

---

Graves, a Jefferson City Deputy Sheriff; Jane Doe Graves, a marital community; Andrew Pate, a Poulsbo Police Officer; Jane Doe Pate, a marital community; J. Rick Hern, Vice President of Courtesy Ford, Inc.; Ken E. Adams, President of Hide N Seek Investigations; Kirk L. Tyler; Jane Doe Tyler, a marital community; Frank P. Porter; Jane Doe Porter, a marital community. Defendants–Appellees,

No. 00–36099.
D.C. No. CV–00–05089–RJB.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 11, 2002.

Decided Aug. 28, 2002.

Before REAVLEY,\* TASHIMA, and RAWLINSON, Circuit Judges.

## MEMORANDUM \*\*

Richard Brees appeals the summary judgment entered against him on his federal constitutional and state law tort claims against deputy sheriffs Michael Stringer and Scott Graves (the deputies), arising out of the June 17, 1999 repossession of his vehicle. We affirm in part and reverse in part and remand.

Under modern summary judgment practice "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). We affirm the summary judgment on the medical treatment claim and the state law claim of outrage. We conclude, however, that summary judgment was not warranted on Brees' claims that his Fourth Amendment rights were violated and that he was deprived of property without due process of law.

### A. *Medical Treatment Claim*

 Regarding the claim that the deputies violated Brees' Eighth Amendment rights by failing to attend to his medical needs, the Eighth Amendment is inapplicable to these facts because it only applies to individuals who have been convicted and sentenced. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983).

---

\* Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9TH CIR. R. 36–3.

■ To the extent that Brees is claiming an analogous right to medical treatment as a pretrial detainee under the Due Process Clause of the Fourteenth Amendment, and assuming without deciding that he qualified as a "detainee" for purposes of such a due process claim, the undisputed facts establish that the deputies are not liable under the first step of the two-step test recently articulated by the Supreme Court in *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

> The threshold question that the court must answer is whether the facts, taken in the light most favorable to the plaintiff, show the officer's conduct violated a constitutional right. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If this initial question is answered affirmatively, the court must address whether the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Id.* at 202, 121 S.Ct. 2151 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

*Stevens v. Rose,* 298 F.3d 880 (9th Cir. 2002) (internal quotation marks and alterations omitted).

A pretrial detainee's clearly established constitutional right to medical treatment is coextensive with a convicted prisoner's Eighth Amendment right to medical treatment. *See Gibson v. County of Washoe,* 290 F.3d 1175, 1187 (9th Cir.2002). Under the Eighth Amendment, inadequate medical care can result in a constitutional violation if it amounts to deliberate indifference to the prisoner's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Under the deliberate indifference standard, an individual is only liable when he is aware of and disregards a substantial risk of serious harm to the plaintiff. *Farmer v. Brennan,* 511 U.S. 825, 847, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Gibson,* 290 F.3d at 1188. The record in the pending case does not support an inference that the deputies were aware of such a risk. There is no record evidence that the deputies were presented with physical proof of an injury, and as Brees concedes, deputy Stringer's report indicates that he did not believe Brees was injured. Thus, the record fails to support that the officers' conduct violated a constitutional right.

**B.  *State Law Outrage Claim***

■ Likewise, we agree with the district court that summary judgment was appropriate on the state law claim of outrage. To recover under this tort, a plaintiff must, among other elements, show that he actually suffered severe emotional distress, and that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Commodore v. Univ. Mech. Contractors, Inc.,* 120 Wash.2d 120, 839 P.2d 314, 321 (Wash. 1992) (internal quotation marks and emphasis omitted). Under Washington law, the court determines as an initial matter if reasonable minds could differ on whether the conduct in issue was sufficiently outrageous to be actionable under this tort. *Dicomes v. State,* 113 Wash.2d 612, 782 P.2d 1002, 1013 (Wash.1989). We agree with the district court that the record does not raise a material issue of fact as to whether Brees suffered the requisite severe emotional distress, and that as a matter of law the conduct of the deputies was not sufficiently outrageous to be actionable.

**C.  *Fourth Amendment Claim***

■ On the Fourth Amendment claim, Brees attested that after the deputies ar-

rived deputy Graves told him to "stay put," and that the deputies "forced" him to stay in the front part of his property and would not allow him to go inside for about two hours. He further attested that during this time he was cold, barefoot, and in his night clothes, in drizzling rain, and that during this period Stringer was in a vehicle "drinking coffee, laughing, and having a good time."

Not every encounter between a citizen and a law enforcement officer implicates the Fourth Amendment. *See INS v. Delgado,* 466 U.S. 210, 215, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). Police questioning, by itself, usually does not fall within the ambit of Fourth Amendment protections. *Id.* at 216, 104 S.Ct. 1758. However, an initially consensual encounter may ripen into a seizure requiring reasonable suspicion or probable cause if an officer, by means of physical force or show of authority, restrains the liberty of a person. *Id.* at 215, 104 S.Ct. 1758. A seizure occurs when a reasonable person would believe that he is not free to leave. *Id.* Brees raised a material issue of fact as to whether he reasonably felt restrained from leaving. On this record, a court cannot find as a matter of law that the deputies had probable cause to detain Brees for two hours as he attested.

Even if the detention of Brees is viewed as an investigative *"Terry* stop" requiring only reasonable suspicion, summary judgment was not warranted on the Fourth Amendment claim. A law enforcement officer is allowed to stop and briefly detain persons for investigative purposes if he has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot." *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). Even if such a detention is lawful at its inception, it may become illegal if its duration is unreasonable. "The length and

scope of a detention must be justified by the circumstances authorizing its initiation." *Pierce v. Multnomah County,* 76 F.3d 1032, 1038 (9th Cir.1996) (citation omitted). "In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe,* 470 U.S. 675, 686, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) (citations omitted). Taking the facts in the light most favorable to Brees, the deputies' conduct violated Brees' Fourth Amendment right to be free from unreasonable seizure. *See Stevens,* at 883 (noting that civil disputes do not give officers probable cause to arrest). In light of clearly established law precluding arrests springing from civil disputes, no reasonable officers in Defendants' position could have believed their conduct was lawful. *See Id.* at 883–84

D. *Due Process Property Claim*

■ In our view, Brees also presented sufficient evidence to survive summary judgment on his claim that he was deprived of his property without due process. The summary judgment record offers evidence of the following. Three private individuals arrived at Brees' property and attempted to repossess his Ford Taurus. A heated verbal dispute and some pushing and shoving ensued, and Brees was struck in the leg by the Taurus as it was moved on his driveway. Brees used his wife's Subaru to block his private road and prevent the repossession. The police were called. The Taurus was still on Brees' property when the deputies arrived. Deputy Stringer called Courtesy Ford to obtain a signature on a repossession form. Stringer eventually ordered Brees to move

the Subaru, thus allowing the repossession to take place.

Brees offered evidence that the repossession was unlawful. Under Washington law, a self-help repossession is allowed "if it proceeds without breach of the peace." WASH. REV. CODE § 62A.9A–609(b)(2) (2002). Otherwise, the creditor must seek relief by judicial process. *Id.* § 62A.9–609(b)(1). The evidence of shouting, pushing and shoving, and evidence that Brees was at one point struck by the Taurus, is evidence that the repossession involved a breach of the peace. Brees offered evidence that the Taurus was still on his property when the deputies arrived, and that the repossession was not completed until one of the deputies ordered Brees to move the Subaru. Brees also offered evidence that he informed Stringer "that the Taurus was mine, [and] that I had been hit by the car when they were trying to repossess it. I also told Stringer about the pushing, shoving, and threats to harm me." Brees also attested that he informed the deputies that the Taurus was still on his property.

We have held, in similar circumstances, that the involvement of state officers in a private repossession can amount to state action under 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff ... must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (citations omitted). In the context of a private repossession, we have explained that

> there may be a deprivation within the meaning of § 1983 not only when there has been an actual "taking" of property by a police officer, but also when the officer assists in effectuating a repossession over the objection of a debtor or so intimidates a debtor as to cause him to

refrain from exercising his legal right to resist a repossession. While mere acquiescence by the police to "stand by in case of trouble" is insufficient to convert a repossession into state action, police intervention and aid in the repossession does constitute state action.

*Harris v. City of Roseburg,* 664 F.2d 1121, 1127 (9th Cir.1981). In *Harris,* we found state action where the officer told the plaintiff whose tractor was repossessed that he would be going "straight to jail" if he attempted to interfere with the repossession. *Id.* at 1127. We later explained, in another repossession case, that a court should look to the totality of circumstances and attempt to distinguish between "affirmative participation" and "passive surveillance." *Howerton v. Gabica,* 708 F.2d 380, 384 (9th Cir.1983). In *Howerton,* we found state action in connection with the eviction of plaintiffs from a trailer home where state officers were present at every step of the eviction process and had recommended to the plaintiffs that they leave the trailer. *Id.* at 384–85.

In the pending case, there is evidence that the deputies repeatedly told Brees to stay put, called the Ford dealership to obtain the proper signature on the repossession form, and ordered Brees to move the Subaru. In our view, Brees raised sufficient evidence of state action to defeat the summary judgment motion, as this evidence amounts to at least as much state officer participation in the repossession as occurred in *Harris* and *Howerton.*

■ The remaining question is whether the deputies were nevertheless entitled to qualified immunity. We think state law limiting self-help to those situations where a breach of the peace is avoided, and federal law recognizing that an unlawful repossession can amount to state action and a deprivation of property actionable under § 1983, are clearly established. Taken in

the light most favorable to Brees, the facts foreclose a finding of qualified immunity at the summary judgment stage. *See Stevens,* slip op. at 11041.

Each party shall bear its costs on appeal.

AFFIRMED in PART, REVERSED in PART, and REMANDED.