**Jane Elizabeth MANN, Plaintiff,**

**v.**

**HILLSBOROUGH COUNTY SHERIFF'S OFFICE, Hillsborough County Sheriff, Cal Henderson et al., Defendants.**

**No. 95–1994–CIV–T–17C.**

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 25, 1996.

See also 1996 WL 380606.

Jane Elizabeth Mann, Wesley Chapel, FL, pro se.

Ellen M. Leonard, Hillsborough County Sheriff's Office, Tampa, FL, for Hillsborough County Sheriff's Office, Cal Henderson, Hillsborough County Sheriff, Kerry Taylor, Deputy, Michael Massimei, Deputy, William Tribble, Deputy, and Troy Davis, Deputy.

Jerome Creasy, Brandon, FL, Leonard H. Marks, Leonard H. Marks, P.A., Tampa, FL, for Jerome C. Creasy, II.

Leonard H. Marks, Leonard H. Marks, P.A., Tampa, FL, for Josephine Creasy.

### ORDER ON MOTIONS AND CROSS-MOTIONS FOR SUMMARY JUDGMENT AND JUDGMENT ON THE PLEADINGS

KOVACHEVICH, Chief Judge.

This cause is before the Court on the following motions and responses:

1. Plaintiff's Motion for Summary Judgment (Docket No. 64).

2. Defendant Jerome and Josephine Creasy's (hereinafter the Creasys) Motion for Judgment on the Pleadings, or alternatively, for Summary Judgment (Docket No. 69).

3. Defendant Sheriff Cal Henderson and Hillsborough County Sheriff's Office's (hereinafter Sheriff) Motion for Judgment on the Pleadings (Docket No. 65).

4. Plaintiff's response to Sheriff's Motion for Judgment on the Pleadings (Docket No. 68).

5. Defendant Creasys' Reply to Plaintiff's Motion for Summary Judgment (Docket No. 71).

6. Plaintiff's Response to Creasys' Motion for Judgment on the Pleadings, or alternatively for Summary Judgment (Docket No. 73).

7. Creasys' Motion to Amend Answer and Memorandum of Law (Docket No. 70).

8. Plaintiff's Response to Creasys' Motion to Amend Answer (Docket No. 92).

### STATEMENT OF THE CASE

This is an action brought pursuant to 42 U.S.C. § 1983 alleging violation of the Fourth Amendment Right to Privacy, Fifth

Amendment Right to Due Process, and the Fourteenth Amendment right to Equal Protection. In addition, plaintiff alleges wrongful eviction.

## BACKGROUND

This case arises out of a landlord-tenant dispute. Through an oral agreement, the Creasys rented a home, owned by them, to Edward and Jane Mann. This agreement provided for a month-to-month tenancy which would begin on May 15, 1994. The Manns paid the Creasys a $100.00 binder, a $300.00 security deposit, and $800.00 representing the first month's rent; however, they failed to pay any subsequent rent. On July 1, 1994, the Creasys filed a complaint for tenant eviction and past due rent/damages against the Manns in the County Court of the Thirteenth Judicial Circuit. On July 25, 1994, a Default was entered by the court against the Manns for failure to deposit the rent money into the Registry of the Court; however, no final judgment was entered. On the same day, the defendants (Manns) filed a Motion to Stay the Writ of Possession and Vacate the Default. Hearing was set for August 2, 1994, and notice of the hearing was sent out on July 26, 1994.

On or about July 31, 1994, the Manns began vacating the premises. On August 1, 1996, the Creasys called the Hillsborough County Sheriff's Office, requesting a deputy be sent to the home rented to the Manns. Deputy Kerry Taylor arrived and witnessed Mrs. Creasy walk through the rented home and verified that certain items, such as a fish tank, dirty dishes, and medication were present in the home.

Later that evening, the Manns returned to the home to find the Creasys parked in the driveway and the locks to the house changed. Deputies William Tribble and Michael Massimei were called to the house. Deputy Tribble allegedly told Mrs. Mann twice that she would need to leave to avoid "getting into trouble."

At the hearing the following morning, August 2, 1994, Judge Honeywell denied the immediate default and Writ of Possession and granted possession to the Manns until the hearing set for October 11, 1994. Following hearings conducted on October 11 and 18, 1994, the court entered a Final Judgment for Possession against the Manns. On December 29, 1994, Judge Honeywell entered an order awarding the Creasys rent and damages, (diminished by property devaluation for the Creasys' failure to comply with the Hillsborough County Housing Code as there were no locks on the windows and standing water in the bedroom and bathroom) for a total of $1,314.48. In addition, Judge Honeywell entered an order against the Creasys, for violation of Florida Statute § 83.67 for preventing the tenant reasonable access to the dwelling and removing the tenant's personal property. The Manns were awarded the statutory remedy of three (3) months rent amounting to $2400.00.

Subsequently, Jane Mann filed this action in Federal court against the Creasys; Hillsborough County Sheriff, Cal Henderson; the Sheriff's Office; and four deputies (Docket Nos. 1 and 25). Following this Court's order entered on July 1, 1996, on Defendant's Motion to Dismiss, the deputies were dismissed from the action and only four (4) counts of the original fourteen (14) filed by Mann remain. (Docket No. 54).

Mann alleges violations of right to privacy and wrongful eviction against the Creasy defendants and negligent failure to train and supervise against Henderson and the Sheriff's Department. The claims remaining are brought pursuant to 42 U.S.C. § 1983, with exception of the wrongful eviction. Because this claim does not raise questions of constitutional violations or violations of federal statutes, this cause is before the Court on pendent jurisdiction.

## SUMMARY JUDGMENT STANDARD

Summary Judgment is appropriate if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to

any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First Nat. Bank of Mt. Pleasant,* 595 F.2d 994, 996–97 (5th Cir. 1979) (quoting *Gross v. Southern Ry. Co.,* 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment. A motion for judgment on the pleadings shall be treated as one for summary judgment. Fed.R.Civ.P. 12(c).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. That burden can be discharged by showing that there is "an absence of evidence to support the nonmoving party's case." *Celotex v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

Issues of fact are " 'genuine' only if a reasonable jury, considering the evidence presented could find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *Id.* at 248, 106 S.Ct. at 2510.

### CREASY'S MOTION FOR JUDGMENT ON THE PLEADINGS OR ALTERNATIVELY FOR SUMMARY JUDGMENT AND MANN'S MOTION FOR SUMMARY JUDGMENT

The Fourteenth Amendment provides in pertinent part that "... [no] State [shall] deprive any person of life, liberty or property without due process of law...." The Fourteenth Amendment limits only governmental action and does not restrict individual or private action. See *Civil Rights Cases,* 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883). The requirement of due process of law is directed at the several States and "can be violated only by conduct that may be fairly characterized as 'state action.' " *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Because the Fourteenth Amendment limits only governmental action, the threshold determination which the Court must make is whether the alleged violation of Mann's rights constituted state action.

Additionally, § 1983 allows an aggrieved party to bring an action against a person or entity acting under "color of state law." For a § 1983 to succeed, a plaintiff must prove that he was deprived of a right secured by the constitution and laws of the United States. See *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Where, as here a private party, the Creasys, is charged with a constitutional violation, the plaintiff must prove state action. *Id.* A plaintiff must establish state action by showing that the private party acted together with, or obtained significant aid from, state officials or that her conduct is otherwise attributable to the state. See *generally, Lugar.* Under § 1983, state action requires a showing that a private party acted under color of state law by conspiring or jointly participating with a state official to violate the plaintiff's constitutional rights. See *Lugar,* 457 U.S. at 941, 102 S.Ct. at 2755–56; *Dahlberg v. Becker,* 748 F.2d 85, 91 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985) (holding that a private party's misuse of state's Judiciary law resulting in plaintiff's unconstitutional imprisonment was not fairly attributable to state).

Action taken by private individuals may be "under color of state law" where there is "significant" state involvement in the action. See *Lugar* 457 U.S. at 932, 102 S.Ct. at 2750–51. The court has articulated a number of tests or factors to determine when state action is "significant." *Id.* at 933, 102 S.Ct. at 2751–52. These include the governmental nexus test, see *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 171–79, 92 S.Ct. 1965, 1970–74, 32 L.Ed.2d 627 (1972); *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974); *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), the joint action test, see *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct.

1729, 56 L.Ed.2d 185 (1978); *United States v. Price,* 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966), the public function test, *see Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) (Clark, J., concurring); *Marsh v. Alabama,* 326 U.S. 501, 507–08, 66 S.Ct. 276, 279–80, 90 L.Ed. 265 (1946), and the state compulsion test, *see generally, Adickes.* The joint action test is satisfied if a "conspiracy" is shown. *See Adickes* 398 U.S. at 152, 90 S.Ct. at 1605–06 (quoting *Price* 383 U.S. at 794, 86 S.Ct. at 1156–57). In *Adickes* and *Price,* the Court explained this last test is met where "[p]rivate persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of [§ 1983].... It is enough that [the private party] is a willful participant in joint activity with the State or its agents," *Adickes* 398 U.S. at 152, 90 S.Ct. at 1606; *Price* 383 U.S. at 794, 86 S.Ct. at 1156–57.

■ While these factors are helpful in determining the significance of state involvement, there is no specific formula for defining state action. *Melara v. Kennedy,* 541 F.2d 802, 805 (9th Cir.1976). The extent of state involvement remains a factual inquiry. "Only by sifting facts and weighing circumstances can the non-obvious involvement of the State in private conduct be attributed its true significance." *Burton* at 722, 81 S.Ct. at 860; *see also, Life Ins. Co. Of North America v. Reichardt,* 591 F.2d 499, 501 (9th Cir. 1979).

■ At some point, as the police involvement becomes increasingly important, repossession by private individuals assumes the character of state action. This is explained in *Harris v. City of Roseburg,* 664 F.2d 1121, 1127 (9th Cir.1981):

[T]here may be a deprivation within the meaning of § 1983 not only when there has been an actual "taking" of property by a police officer, but also when the officer assists in effectuating a repossession over the objection of a debtor or so intimidates a debtor as to cause him to refrain from exercising his legal right to resist a repossession. While mere acquiescence by the police to "stand by in case of trouble" is insufficient to convert a repossession into state action, police intervention and aid in

the repossession does constitute state action.

The point at which police involvement becomes significant state action was discussed by the Sixth Circuit in *United States v. Coleman,* 628 F.2d 961, 964 (6th Cir.1980). The court in that case found no state action where two police officers were parked nearby while a creditor's agent repossessed a truck whose owner was absent. That court noted that this was different from cases such as *Harris* in which police accompanied the repossessor to the debtor's residence, and together with the repossessor, confronted the debtor in order to effectuate a repossession. "The affirmative participation by the police sets those cases apart from the passive surveillance of the police here." *Id.* at 964 n. 1. In *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507 (5th Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980), the court stated that "police intervention and aid" in the repossession by Chrysler's agents would make the private party a state actor. In that case, however, where the police had never met the repossessing agents and were summoned on only a single occasion, the majority did not find the necessary police intervention and aid. *Id.* at 510 n. 4, 511, 513.

■ In order to determine whether the Creasys acted under color of state law, the circumstances surrounding the private eviction and invasion of privacy must be examined in their totality. In this case, Mann claims that the deputies were present on three (3) separate occasions. First, she claims deputy Taylor was present, and accompanied the Creasys when the rental property was first entered without permission, and after which, the locks were changed. Second, she claims that deputies were called to the residence when the Manns arrived, and that the deputies made statements to the Manns such as instructing them to wait on the street and that she would need to leave to avoid getting into trouble. Third, she claims that when she and her husband returned to the home after being granted possession by the county court on August 2, 1994, and found some belongings missing, she telephoned the Sheriff's office and depu-

ties were sent to her home. She requested that the deputies make a report of the "stolen" items; however, being aware of the landlord-tenant dispute, the deputies declined to do so. (Docket No. 25). (Plaintiff's claim against the police for failure to file a report was dismissed by this Court. (Docket No. 54)). Mann acknowledges that no deputies were present when photographs were taken of the residence or when the Creasys changed the locks.

Because there is no dispute as to the factual and physical involvement of the deputies, the only remaining issue is whether the documented presence and actions by the police were sufficient to constitute significant state action. This case involves a maximum of three (3) appearances of sheriff's deputies, and only two (2) of those involved the Creasys. The Creasys requested the deputies presence as a measure to insure there was not any trouble as there had been hostilities exhibited in the past.

This case hinges upon whether the police action effectuated the unconstitutional acts. The only involvement of the deputies was: 1) entering Mann's home without her presence and permission and 2) being present when the Creasys prevented the Manns from gaining access to their rented home. Although these actions might constitute wrongs to the Plaintiff, they do not rise to the level of a conspiracy or joint action necessary to show color of state law required to bring a § 1983 action.

It must be noted that the Creasys changed the locks and took pictures inside the Mann's home without the presence or aid of the deputies. Furthermore, as they had keys to the house and the Manns were not present when they entered the house, the deputies did not effectuate the entry into the home. In addition, as the Creasy's changed the locks without the presence of the deputies, thus denying the Plaintiff reasonable entry, the deputies did not effectuate the wrongful eviction. As such, the facts set forth do not even come close to establishing a conspiracy or joint venture.

Compare *Harris v. City of Roseburg*, to the instance case. There, Police officers came between the debtor and the disputed property as a creditor was preparing to repossess it. One of the officers told Harris to "stand back and get away," and further added that if Harris interfered "either any further or in any way that [he, Harris] was going straight to jail." 664 F.2d at 1124, 1127. The officer's threat of taking Harris to jail, in that case, effectuated the seizure of the property and demonstrated significant state action. In the case at bar, the deputies' statements did not rise to the level of becoming the type of threatening ultimatum as that found in *Harris*. As such, this Court finds that there was no conspiracy or joint action with the deputies to signify action under color of law on behalf of the Creasys. As such, this Court lacks jurisdiction and therefore grants the Creasys' Motion for Summary Judgment thereby denying Mann's Motion for Summary Judgment.

Because the Creasy's motion is dispositive of the federal claim, Mann's pendent state law claim is dismissed without prejudice for lack of subject matter jurisdiction. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

### DEFENDANT HENDERSON'S MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant Cal Henderson, Sheriff (hereafter Henderson) seeks judgment on the pleadings as to Plaintiff's claims against him pursuant to 42 U.S.C. § 1983. In support of his motion, Henderson asserts that gross negligence cannot support a claim of deprivation of constitutional rights under § 1983, and the Amended Complaint fails to allege deliberate indifference to the Plaintiff's constitutional rights. In addition, Henderson suggests that this Court's prior findings that "the Sheriff's deputies did not violate the Mann's due process" precludes liability of Sheriff.

This circuit, in *Greason v. Kemp*, 891 F.2d 829, 836 (11th Cir.1990), recognized that, pursuant to *Monell v. Dept. Of Social Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), "supervisory personnel cannot be held liable under § 1983 for the acts of their subordinates under the doctrine of responde-

at superior; however, that does not preclude an inquiry into whether a supervisor was independently liable under § 1983." *Greason* 891 F.2d at 836. This Court agrees that defendants cannot be held liable under § 1983 for mere negligence, *Owens v. City of Atlanta,* 780 F.2d 1564, 1566 (11th Cir.1986). Negligent conduct does not constitute the type of abuse of government power that is cognizable under § 1983. *Williams v. Kelley,* 624 F.2d 695 (5th Cir.1980), *cert. denied,* 451 U.S. 1019, 101 S.Ct. 3009, 69 L.Ed.2d 391 (1981). Something more akin to deliberate indifference is required. Deliberate indifference implies knowledge, and knowledge constitutes conduct above that of mere negligence.

Use of a negligence standard to determine liability would result in *de facto* respondeat superior liability, and for that reason, a supervisor is immune unless a reasonable person in the supervisor's position would have known that the conduct (or inadequate training in the case at bar) infringed upon constitutional rights of others. *Id.* The *Greason* court ruled that courts must apply a three-prong test to determine a supervisor's liability:

> (1) whether, in failing adequately to train and supervise subordinates, [the supervisor] was deliberately indifferent ...; (2) whether a reasonable person in the supervisor's position would know that his failure to train and supervise reflected deliberate indifference; and (3) whether [the supervisor's] conduct was causally related to the constitutional infringement by his subordinate.

*Greason,* at 836–837.

Plaintiff sets forth evidence (although weak) in support of her contention that Sheriff Henderson failed to adequately train and supervise his subordinates, including statements taken in sworn affidavits that deputies entered the plaintiff's home without her knowledge or permission, that Deputy Tribble directed Plaintiff to wait on the street denying her access to the rental property to which she had a legal right, and that deputies admitted lacking knowledge as to proper procedure and, in fact, attempted to contact an immediate supervisor to devise proper procedure. Sheriff Henderson, on the other hand, stated in his Answer and Affirmative Defenses (Docket No. 56) that he has adequate customs, policies, and procedures to properly instruct deputies in legal procedures related to landlord and tenant disputes and as to constitutional and civil rights laws.

In viewing the evidence presented in the light most favorable to the non-moving party, a jury might reasonably find that: 1) Sheriff Henderson failed to adequately train and supervise his subordinates; 2) his awareness of his officers' scheduling and their level of training, could be viewed as constituting deliberate indifference; 3) a reasonable person in Sheriff Henderson's position could have known that failure to adequately train and supervise would constitute deliberate indifference, and; 4) Henderson's conduct could be found to be causally related to the infringement of the plaintiff's constitutional rights. Whether Henderson's conduct actually constituted deliberate indifference and was causally related to the violation of Mann's rights is a factual question, and as such, summary judgment is improper. *See Greason* 891 F.2d at 840.

In addressing this Court's findings of immunity for the deputies, this Court notes that granting immunity is not the same as a finding of no constitutional violation. This Court did, however, note that F.S. § 83.54 was "not so clearly established so as to preclude an otherwise reasonable sheriff deputy from entering upon the premises and conducting himself in a similar manner as did the Defendant Deputies." (Docket No. 54). In addition, this Court held, that, for purposes of the motion to dismiss, the deputies did not violate the due process rights of the plaintiff; however, in so finding, the Court did not preclude the possibility of any and all conceivable constitutional violations. Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands. As such this Court is not inclined to bar any and all claims of constitutional violations on its prior finding that due process rights were not violated. *See Soldal v. Cook County,* 506 U.S. 56, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992).

The Fourth Amendment, for instance, made applicable to the States by the Fourteenth, *Ker v. California,* 374 U.S. 23, 30, 83 S.Ct. 1623, 1628, 10 L.Ed.2d 726 (1963), provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." A "seizure" of property occurs when there is "some meaningful interference with an individuals possessory interests in that property." *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). At the very core of the Fourth Amendment "stand the right of a man to retreat into his own home." *Silverman v. U.S.,* 365 U.S. 505, 511, 81 S.Ct. 679, 682–83, 5 L.Ed.2d 734 (1961); *see also Oliver v. U.S.,* 466 U.S. 170, 178–179, 104 S.Ct. 1735, 1741–42, 80 L.Ed.2d 214 (1984); *Payton v. New York,* 445 U.S. 573, 601, 100 S.Ct. 1371, 1387–88, 63 L.Ed.2d 639 (1980); *Wyman v. James,* 400 U.S. 309, 316, 91 S.Ct. 381, 385, 27 L.Ed.2d 408 (1971).

Actions of the deputies, by blocking the Plaintiff's entrance into the house or by entering the house, could constitute Fourth Amendment violations; however, whether this amendment or any other constitutional right was in fact violated is a different question that requires determining if the action was reasonable. This inquiry entails the weighing of various factors and facts. *Soldal v. Cook County,* 506 U.S. 56, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992). For these reasons, summary judgment as to Sheriff Cal Henderson is not appropriate.

### Dismissal of Claim Against the Sheriff's Office

■ In *Monell v. Department of Social Services,* the Supreme Court held that Congress "intend[ed] municipalities and other local government units to be included among those persons to whom § 1983 applies." 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). The question here, however, is not whether the Hillsborough County Sheriff's office is a person within the meaning of *Monell,* but whether the Department is a legal entity capable of being sued. *Dean v. Barber, et. al.,* 951 F.2d 1210, 1214 (11th Cir.1992). As pointed to by the Eleventh Circuit, sheriff and police departments are not usually considered legal entities subject to suit, *id., see also, Post v. City of Fort Lauderdale,* 750 F.Supp. 1131 (S.D.Fla.1990); *Shelby v. City of Atlanta,* 578 F.Supp. 1368, 1370 (N.D.Ga.1984); however, the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Fed.R.Civ.P. 17(b); *see also, Dean* at 1214; *Shaw v. California Dept. of Alcoholic Beverage Control,* 788 F.2d 600, 605 (9th Cir.1986).

■ Local government entities can be sued for violations of constitutional rights, *see Monell* at 690, 98 S.Ct. at 2035–36; *Pembaur v. City of Cincinnati,* 475 U.S. 469, 484 n. 12, 106 S.Ct. 1292, 1300 n. 12, 89 L.Ed.2d 452 (1986); however, the violation must bear some relation to the entities' "policies or customs." *Monell* at 690–91, 98 S.Ct. at 2035–36; *see City of St. Louis v. Praprotnik,* 485 U.S. 112, 124 n. 1, 108 S.Ct. 915, 924 n. 1, 99 L.Ed.2d 107 (1988). The contours of an entity's liability have been delineated in cases arising after *Monell* and vary greatly from state to state. *Praprotnik,* 485 U.S. at 123, 108 S.Ct. at 923–24; *compare, Dean* 951 F.2d at 1214–15 (holding that a Sheriff was a state employee and thus the correct party in interest was the state); *with Strickler v. Waters* 989 F.2d 1375 (4th Cir.), *cert. denied,* 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993) (holding that neither the city nor the state was responsible for the actions of the Sheriff, because, as a state constitutional officer, [as is Florida's Sheriff], the Sheriff served independent of the municipal, county, or state government); *and Zook v. Brown,* 865 F.2d 887, 895 (7th Cir.1989) (concluding that by county delegation and approval, the sheriff was responsible for establishing final county policy on discipline for the county and therefore was the proper party).

■ Florida has examined the question as to the correct party in interest as it pertains to police departments and found the city or municipal corporation to be the proper party. *See Post v. City of Fort Lauderdale,* 750 F.Supp. 1131 (S.D.Fla.1990); *Florida City Police Dept. v. Corcoran,* 661 So.2d 409 (Fla. 3d DCA 1995). In so finding, the courts have reasoned that the police department is the vehicle through which the city

fulfills its policing functions. Therefore, the Florida courts have found that the city police department is not a legal entity and has no legal existence separate and apart from the city. *Corcoran,* 661 So.2d at 410.

█ The ultimate determination of the proper party involving governmental entities in a § 1983 action depends upon who had final policy making authority. Justice O'Connor set forth the "guiding principles" in *Pembaur:*

> First, ... municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, "that is, acts which the municipality has officially sanctioned or ordered." Second, only those municipal officials who have "final policy making authority" may by their actions subject the government to § 1983 liability. Third, whether a particular official has "final policy making authority" is a question of state law. Fourth, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business.

475 U.S. at 123, 106 S.Ct. at 970–71. Justice O'Connor added that state law would not always "speak with clarity." *Id.* at 125, 106 S.Ct. at 971–72.

█ The *Praprotnik* test indicates that liability relies more on final policy making authority than on technical characterizations of officials as state or county employees. *Dotson v. Chester,* 937 F.2d 920 (4th Cir. 1991). Thus, a "corollary proposition" is "whether an official acts on behalf of the county or the state." *Owens v. Fulton Co.,* 877 F.2d 947, 950 (11th Cir.1989). Additionally, the Supreme Court recognized in *Pembaur* that, under appropriate circumstances, a Sheriff can establish final policy. 475 U.S. at 484 n. 12, 106 S.Ct. at 1300 n. 12.

█ Although this Court has held that the Sheriff's Office lacks the capacity to be sued, there is no need to examine who is the proper party in this case, (the Sheriff's Office, Sheriff, County, or State) because the plaintiff's complaint makes no claim that the allegedly unconstitutional actions "imple-

ment[ed] or execute[d] a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or that the alleged deprivations were taken pursuant to a persistent and widespread custom. *Monell,* at 690–691, 98 S.Ct. at 2035–36. As Mann does not allege that the Sheriff's Department promulgated an official office or departmental policy to negligently train or fail to train its deputies, Mann fails to allege a policy violation sufficient to sustain an action against the Sheriff's Department under § 1983. For this reason, defendant's motion for summary judgment as to the Hillsborough County Sheriff's Office is granted.

## CONCLUSION

As discussed herein, the undisputed facts fail to show a conspiracy or joint action sufficient to bring a § 1983 action against a private party. For this reason, the Creasy Defendant's Motion to Amend Answer is denied as moot. In addition, a factual dispute exists as to whether the Sheriff failed to adequately train and supervise his deputies; whether his failure to do so amounted to deliberate indifference; and whether such failure resulted in a violation of the plaintiff's constitutional rights. For this reason, summary judgment is improper. As the plaintiff fails to allege implementation, promulgation, or execution of a departmental policy which resulted in a violation of her rights, the Sheriff's Office is not a proper party to this action. This leaves only one defendant, Sheriff Cal Henderson, and Counts XI and XII remaining for adjudication in this case. Accordingly, it is

**ORDERED** that Defendant Creasys' Motion for Judgment on the Pleadings or alternatively for Summary Judgment (Docket No. 69) be **GRANTED,** and Creasys' Motion to Amend Answer (Docket No. 70) be **DENIED AS MOOT.** Further, it is,

**ORDERED** that Plaintiff's Motion for Summary Judgment (Docket No. 64) be **DENIED,** and Defendant Sheriff and Sheriff's Office's Motion for Judgment on the Pleadings (Docket No. 65) be **GRANTED** as to the Sheriff's Office and **DENIED** as to Sheriff Henderson; and Count V be dismissed as a

state law claim over which the court will not exercise pendent jurisdiction.