**NEW YORK STATE TRAWLERS ASSOCIATION, Lauren Ridge, and Duncan Ridge, Plaintiffs,**

v.

**Thomas C. JORLING, Commissioner, New York State Department of Environmental Conservation, Defendant.**

No. CV–91–1180.

United States District Court, E.D. New York.

April 17, 1991.

Leon Friedman, New York City, for plaintiffs.

Robert Abrams, Office of Atty. Gen. of State· of N.Y., Environmental Protection Bureau by Gregory J. Nolan, New York City, for defendant.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

This is a motion for a preliminary injunction enjoining the State of New York from enforcing a section of the state's Environmental Conservation Law.

The following facts are essentially undisputed for purposes of this motion. The individual plaintiffs in this case operate a commercial fishing trawler on the Long Island Sound. The institutional plaintiff is an association representing others engaged in commercial fishing by trawl. According to the plaintiffs, there are less than fifty full-time trawlers currently operating in New York waters. The individual plaintiffs before this year annually caught up to one hundred lobsters per day by trawl and sold them commercially. The individual plaintiffs have been fishing for lobsters along with finfish for the past ten years, and the sale of lobsters represents a substantial portion of their income.

The individual plaintiffs fish by dragging a net in the water behind their boat. Because the net comes on occasion in contact with or close to the sea floor, some lobsters are snared by the net and caught. Although the primary purpose of trawl fishing is to catch finfish, the lobsters caught are also sold. The alternate method of lobster fishing is "pot" fishing. This method employs individual lobster traps dropped on the sea floor. Most lobster fishing in New York waters is done by "pot" method.

Prior to 1983, New York State placed no limit on the number of lobsters that persons in the commercial fishing business could catch and keep. In 1983, Environmental Conservation Law § 13–0329(1) was enacted which stated that lobsters could be fished by either "trawl" or "pot" but that persons fishing by trawl were limited to one hundred lobsters per day. On January 1, 1991, an amendment to this law went into effect which prohibited any fishing for lobsters by trawl, requiring those caught to be returned to the water.

The stated purpose of the new law is to "reduce mortality and damage rates of lobsters, and to solve much of the illegal lobster possession problem in the Marine and Coastal District." (Legislative Bill Jacket, Ex. C of plaintiffs' affidavit). To this end, the law sought: (1) to have New York join other states in developing "pot-only" lobster fisheries, (2) to eliminate trawlers that direct their efforts at catching lobsters, (3) to protect lobster stocks in Long Island Sound, and (4) to protect against damage to lobster pots and seabeds by nets.

## DISCUSSION

Plaintiffs argue that the new law represents an unconstitutional deprivation of their equal protection and due process rights and constitutes a Bill of Attainder. They seek a preliminary injunction, preventing enforcement of the law until such time as a trial can be held.

The standard in this circuit for obtaining a preliminary injunction in a case as this requires a showing of (a) irreparable harm and (b) a likelihood of success on the merits. *Sperry International Trade, Inc. v. Israel*, 670 F.2d 8, 11 (2d Cir.1982) (citing *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979)); *Medical Society v. Toia*, 560 F.2d 535, 538 (2d Cir.1977).

## IRREPARABLE HARM

According to plaintiffs, they will suffer irreparable harm if the law is not enjoined, because "it is difficult to measure the damages that plaintiffs will suffer, and the defendant cannot answer in damages in the future since he enjoys Eleventh Amendment immunity." Moreover, the money lost is said to be vital to plaintiffs' continued existence, constituting 40% of their income.

█ Normally, monetary damages do not constitute irreparable harm. However,

the Court of Appeals has recognized that, where such damages cannot be later collected because the defendant enjoys eleventh amendment immunity, the damages become irreparable. *United States v. State of New York*, 708 F.2d 92, 93 (2d Cir.1983). While it is true that plaintiffs could sue in New York State courts for the monetary damages, the Court of Appeals has stated that this does not eliminate the "irreparability" because "in deciding whether a federal plaintiff has an available remedy at law that would make injunctive relief unavailable, federal courts may consider only the available federal legal remedies." *Id.*

 In addition, plaintiffs claim that the loss of the profits will drive them out of business. Where a loss of profits is severe enough to drive a party out of business, this can be irreparable harm. Such claims must be bolstered by at least some "factual support." *Bell & Howell v. Masel Supply Co.*, 719 F.2d 42 (2d Cir.1983); *Auto Sunroof v. American Sunroof*, 639 F.Supp. 1492, 1494 (S.D.N.Y.1986). Here, plaintiffs state that 40% of their income comes from lobster trawling and that if they are unable to continue they will not be able to meet mortgage payments on their boats which will then be seized, putting them out of business.

 Defendant's only argument on this point is its claim that plaintiffs' delay in seeking a preliminary injunction undercuts their claim of irreparable harm. However, delay does not automatically defeat claims of immediacy; rather, it puts the burden on the moving party to explain the delay. *Hybertech v. Abbott Labs*, 849 F.2d 1446, 1457 (2d Cir.1988); *Citibank N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir.1985). Here, plaintiffs state that they were not able to obtain affordable legal counsel until quite recently. In all events, given the backlog of cases in this district, even had plaintiff obtained counsel earlier, a trial could not have been held which would have avoided the harm.

## LIKELIHOOD OF SUCCESS ON THE MERITS

### Equal Protection Violations

Plaintiffs' first argument is that the ban on trawling for lobsters and on possession of lobsters by those holding a trawler's license is a violation of the equal protection clause of the fourteenth amendment. The essence of plaintiffs' claim is that the distinctions made between those who land lobsters by the trapping method and those who do so by trawling is arbitrary.

The standard under the equal protection clause for judging the appropriateness of legislative distinctions between similar sorts of economic activities is set out in *City of New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). In that case, the Supreme Court held as follows:

> "When local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations.... Unless a classification trammels fundamental personal rights ... our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest. States are accorded wide latitude in the regulation of their local economies under the police powers, and rational distinctions may be made with substantially less than mathematical certitude."

*Id.* at 303, 96 S.Ct. at 2516–17. In delineating where precisely courts should draw the line between permissible and impermissible legislative classifications relating to the economy, the *Dukes* Court held that "it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment." *Id.* at 303–04, 96 S.Ct. at 2517.

The Court of Appeals has expressed similar deference to legislative distinctions involving issues in the local economy. In *Dieffenbach v. Attorney General of Vermont*, 604 F.2d 187, 195 (2d Cir.1979), the court stated that such distinctions carry

with them "almost the equivalent of a strong presumption of constitutionality." It is clear that, in order to demonstrate that they are likely to succeed on the merits of this claim, plaintiffs face a considerable burden.

■ Plaintiffs concede that the legislative purpose of environmental conservation is a legitimate one. The gravamen of plaintiffs' complaint is that in seeking to achieve that goal the state has impermissibly chosen a method that cannot possibly serve the goal and which impermissibly discriminates against those who trawl for lobster as opposed to those who trap lobster. Plaintiffs are not likely to prevail on the merits of this claim.

As described on the bill jacket for ECL § 13–0329, the principal purpose of the legislation was to "reduce mortality and damage rates of lobsters ... in the Marine & Coastal District."

Defendant Jorling supports the rationality of the legislation as a means of accomplishing these purposes by noting five studies commissioned by institutions such as the State of Massachusetts and the United States Department of Commerce which indicate that trawling inflicts "high levels of damage and delayed mortality to lobsters, particularly those which have recently molted, taken in trawl nets." (Deft's Aff. ¶ 15). While both pot and trawl fishing are relatively indiscriminate in trapping various categories of lobsters, pot fishing, the studies note, allows the person fishing to return short and soft shelled lobsters to their habitat with relatively less risk of death or injury as compared with trawls. These studies present a rational basis for the legislature's decision to ban lobstering by the trawling method.

Plaintiffs respond to this argument by pointing out distinctions between the types of trawling gear and environmental conditions studied and those that, they assert, prevail in New York. Instead, they argue, the legislature should have based its determination on other scientific studies which show that trawling has little effect on lobsters. Plaintiffs, however, miss the point. Such arguments as they advance go to the wisdom of enacting the legislation, an issue clearly reserved for the legislature, and not to the question whether there is a rational basis for the legislation. Plaintiffs suggest that reliance on out-of-state reports was misplaced and unwise. However, "the judiciary may not sit as a superlegislature to judge the wisdom ... of legislative policy determinations." *City of New Orleans v. Dukes*, 427 U.S. at 303, 96 S.Ct. at 2517. Regardless of which sets of studies turn out to be correct, it was not irrational for the legislature to follow one set of studies rather than the other. Accordingly, I am unable to conclude that the plaintiffs are likely to prevail on their equal protection clause claim.

Plaintiffs make an alternative argument that, even if trawling can be said to injure lobsters and the ocean floor, the law in question will not help solve this problem because it does not ban trawling entirely.

This argument is also not persuasive. By requiring that any lobsters caught be thrown back, the legislature eliminates incentives to seek out lobsters deliberately and encourages commercial fisherman to take steps to avoid the time-consuming process of returning lobsters caught to the ocean floor unharmed.

### Bill of Attainder

Article I, section 10 states that "no State shall ... pass any Bill of Attainder." As the Supreme Court explained, a bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Administrator of General Services*, 433 U.S. 425, 468, 97 S.Ct. 2777, 2803, 53 L.Ed.2d 867 (1977).

■ Essentially, to show that a law is a bill of attainder, it is necessary to show that it is targeted at a specific and identifiable person or class of people and that it inflicts punishment on these people. *Nixon, supra* at 468, 97 S.Ct. at 2803; *United States v. Brown*, 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965). However, the Court has made it quite clear that "punish-

ment" does not encompass every injury or burden. As the Supreme Court explained: "[E]very person or group made subject to legislation which he or it finds burdensome may subjectively feel, and can complain, that he or it is being subjected to unwarranted punishment.... [The prohibition on] bills of attainder was not intended to serve as a variant of the equal protection doctrine." *Nixon, supra* at 470–71, 97 S.Ct. at 2804.

Rather, the general test set out by the Court for whether or not something is intended as punishment is to determine "whether the law under challenge, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes." *Nixon, supra* at 476, 97 S.Ct. at 2807.

■ Under this test, plaintiffs cannot succeed for the reasons already discussed. As discussed *supra,* the legislation has several legitimate nonpunitive purposes, protection of the lobster population, protection of the sea floor, etc., and there is at least a rational basis for believing that the bill will achieve these purposes. It may well be that the legislature is wrong and that the bill will do harm rather than good. However, as Justice Black explained "an appraisal of the wisdom of legislation is an attribute of the power to make laws, not of the power to interpret them." *Griswold v. Connecticut,* 381 U.S. 479, 513, 85 S.Ct. 1678, 1697, 14 L.Ed.2d 510 (1965) (Black, J., dissenting).

Plaintiff claims that this law, like the one in *Brown, supra,* has the effect of barring a specific group of individuals from following a particular occupation and that this, as in *Brown,* should be considered "punishment." However, this misreads the case law. The Court in both *Brown* and *Nixon* explained that the question is not merely whether the law prevents a group of individuals from practicing their profession but whether that is the bill's main goal or whether the law also serves some legitimate rational function. *Nixon, supra* 433 U.S. at 470–72, 97 S.Ct. at 2803–05; *Brown, supra* 381 U.S. at 453–56, 85 S.Ct. at 1717–19. Thus, again, the question is

reduced to one of "rational basis" and must necessarily be decided in the same way.

### Violation of Due Process

■ Plaintiffs' third and final argument is that EC § 13–0329 is violative of the due process clause of the fourteenth amendment. The gravamen of this argument is that ECL § 13–0329 creates two "irrebuttable presumptions" which cause the plaintiffs serious economic injury without due process. The presumptions plaintiffs contend were created by the law are (1) that lobster trawling causes more damage to the environment than lobster trapping and (2) that trawl fisherman are law breakers who habitually possess lobster illegally. (This second alleged presumption is drawn from the fact that a secondary stated purpose of the statute is to alleviate the problem of illegal lobster possession by trawl fisherman.)

In support of their due process argument, plaintiffs cite Supreme Court precedents where the irrebuttable presumptions were found to be unconstitutional. In cases such as *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) and *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), the Court found constitutional violations where states classified persons in ways that were irrebuttable, regardless of facts to the contrary. In *Stanley,* for instance, state law declared fathers not married to the mothers of their children *per se* unfit for custody of the children without offering these men an opportunity to prove otherwise. "When th[e] presumption is not necessarily or universally true in fact," wrote the Court in *Vlandis,* "due process is violated to the extent that rights are denied based upon the presumption." *Vlandis,* 412 U.S. at 452, 93 S.Ct. at 2236.

What is clear from the outset is that plaintiffs' first alleged "irrebuttable presumption" does not fit the framework of the cases cited. The legislature's implicit finding that trawling damages the lobster beds is not a classification of persons but rather a legislative judgment on an issue of scientific fact which is subject to legitimate

dispute. In making policy, legislative bodies make judgments of this sort all the time. Although this judgment may affect the viability of a certain class of persons, trawler fisherman, it does not impose a direct, targetted burden on the group as such, nor does it classify that group in any particular way.

Plaintiff's allegation that the statute irrebuttably presumes that trawl fisherman are lawbreakers who would and have exceeded the (former) legal limit is without merit for the same reason. Plaintiffs contend and the defendant does not deny that only one trawl fisherman has ever been found to have violated the (former) one hundred lobster limit. With this factual background, plaintiffs assert that the state has imposed an unconstitutional burden upon them by way of an irrebuttable presumption, since the statute does not give them an opportunity to prove that they are not lawbreakers. They complain that no procedural mechanisms are available for trawl fisherman to demonstrate that they have complied with the limit law consistently and have not directed their efforts at lobstering.

These arguments are beside the point since the statute does not make a judgment about the character of the trawl fisherman but only about the affect their method of operation has upon the environment. To the extent that the state could, if it desired, ban lobstering altogether for the protection of the lobster population, it goes without saying that it may pursue less extreme measures toward the same goal. The fundamental misconception the plaintiffs operate under is that they ever had the right to a certain catch of lobster in the first place; they did not and, as such, cannot now be heard to complain when the privilege of landing lobsters is taken away.

A more technical view of the legislation points toward the same conclusion. The statute bars persons on trawling vessels from landing or possessing lobsters unless no trawl (net) is being used on the vessel. See ECL § 13–03239. As the sentence above makes clear, "trawl fisherman" such as plaintiffs here may seek to land lobsters; the only condition is that they not do so with a net. Such persons may, under the legislative scheme, place lobster traps on the sea bottom if they wish. To that extent, this legislation is not directed at the group of persons as such of which the plaintiffs are a part. It creates no irrebuttable presumptions about the plaintiffs *per se* or about others similarly situated but only limits for a legitimate state purpose the method by which they conduct their business.

## SERIOUS QUESTIONS AND BALANCE OF HARDSHIPS

Plaintiffs urge that, even if there is not a finding of likelihood of success, there are still "serious questions going to the merits of these constitutional claims." However, as the above discussion indicates, the serious questions relate to the merits of the legislature's decision, not to the merits of the claim that this Court should overturn that decision. Moreover, in a case such as this where plaintiffs seek injunction prohibiting the enforcement of a state law, a preliminary injunction will issue only on a showing of likelihood of success. *Medical Society v. Toia, supra* at 538.

For the reasons stated above, the plaintiffs' motion for a preliminary injunction is denied.

SO ORDERED.