John and Lynne BARRETT, Plaintiffs,

v.

Mary HARWOOD; Scott Smith; John Durant, Police Officer, Village of Malone; James Phillips, Chief of Police, Village of Malone; Village of Malone, Defendants.

No. 97–CV–23.

United States District Court,
N.D. New York.

July 3, 1997.

repossession of their vehicle. Plaintiffs also bring state law claims for conversion, breach of contract, and violation of the Uniform Commercial Code. Plaintiffs seek damages and injunctive relief.

Plaintiffs now move for a preliminary injunction ordering defendant Scott Smith to immediately return their truck and to transfer any title that he has to them. Plaintiffs also request that this Court enter default judgment against defendant Mary Harwood.

## I. BACKGROUND

John and Lynne purchased a 1982 Kenworth Truck from **defendant Mary Harwood** in June of 1995. (Affidavit of John and Lynne Barrett ["Barrett Aff."] ¶ 3). The total purchase price of the truck was $11,000, to be paid in minimum payments of $300 per month during the first ten days of the month. (*Id.* ¶¶ 3–4). Plaintiffs took possession of the truck, as well as original title, in Harwood's name. (Barrett Aff. ¶ 5).

On November 8, 1996, Harwood contacted **defendant Scott Smith,** a towtruck operator, and asked Smith to assist with the repossession of the truck. (Smith Dep. at 21–22). Harwood told Smith that John had forged her name on certain papers and was behind on truck payments. (*Id.* at 22). Smith verified with the Department of Motor Vehicles that Harwood was the title owner of the truck, then contacted the Village of Malone Police, concerned that there may be violence at the scene of the repossession. (*Id.* at 24–25). He was told by a Sergeant Richie that the police could not assure that a patrol would swing by, but that if one became available, it would be sent over. (*Id.* at 25).

Smith arrived at the scene of the repossession. **Defendant John Durant** arrived a few minutes later, by which time Smith had already hooked up to the truck. (Smith Dep. at 40). John then arrived at the scene and asked Officer Durant what was going on. (Durant Dep. at 14; Barrett Aff. ¶ 11). Officer Durant responded to the effect that the truck was being repossessed for nonpayment. (Durant Dep. at 14; Barrett Aff. ¶ 11). John stated that he had proof that he had made the payments on the truck; Officer Durant replied that he was "only there to keep the

Alley, Schneider Law Firm, Plattsburgh, NY, for Plaintiffs; Mark A. Schneider, of counsel.

Law Office of John A. Piasecki, Malone, NY, for Defendant Scott Smith; John A. Piasecki, of counsel.

### MEMORANDUM DECISION AND ORDER

McAVOY, Chief Judge.

**Plaintiffs John and Lynne Barrett** ("John" and "Lynne") bring this action pursuant to 42 U.S.C. § 1983, alleging violations of their due process rights under the Fourteenth Amendment to the United States Constitution in connection with the alleged

peace." (Smith Dep. at 41; John Barrett Dep. at 66).

John then went to get his wife. When Lynne arrived on the scene she attempted to show Officer Durant papers regarding their right to the truck. (Durant Dep. at 16; Barrett Aff. ¶ 12). Officer Durant responded that this was a civil matter in which he could not get involved. (Durant Dep. at 17; Smith Dep. at 28). Soon thereafter, Harwood arrived on the scene. John and Harwood then became involved in an argument, during which John struck Smith. (John Barrett Dep. at 68–69; Durant Dep. at 18; Smith Dep. at 30). Officer Durant told John that if he struck Smith again, he would be arrested and placed in the squad car. (Lynne Barrett Dep. at 21–22; Durant Dep. at 19; Smith Dep. at 29).

Eventually, Smith asked John for the keys to the truck. (Smith Dep. at 30). John gave them to Smith voluntarily, the parties dispersed, and Smith towed the truck to his establishment. (Smith Dep. at 30, 55).

## II. DISCUSSION

### A. Standard for a Preliminary Injunction

■ In order to obtain a preliminary injunction, the plaintiffs must show (1) irreparable harm; and (2) either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping in the movant's favor. *Molloy v. Metropolitan Transp. Auth.*, 94 F.3d 808, 811 (2d Cir.1996); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979).

### B. Irreparable Harm

■ Courts in this Circuit have repeatedly held that "'[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered.'" *Borey v. National Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir.1991) (quoting *Bell & Howell: Mamiya Co. v. Masel Supply Co.*,

719 F.2d 42, 45 (2d Cir.1983)). The party seeking the preliminary injunction must demonstrate that "it is *likely* to suffer irreparable harm if equitable relief is denied." *Borey*, 934 F.2d at 34 (quoting *JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir.1990)) (emphasis in original). Hence, a mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction. *Borey*, 934 F.2d at 34.

■ Plaintiffs point to the following in support of their argument that they will suffer irreparable harm if the injunction is not granted: (1) instead of making monthly payments of $300 to Harwood for the truck, they are now forced to lease a truck at a cost of $470 per week; (2) on information and belief, Harwood and Smith would not be able to satisfy a judgment against them; (3) plaintiffs believe that Harwood and Smith are using their truck with the likelihood of waste, damage and deterioration; and (4) the unconstitutional deprivation of their property. The second of these assertions assumes that the plaintiffs have a viable § 1983 claim. That issue is dealt with in the discussion of plaintiffs' likelihood of success on the merits, *infra*.

As to the relevance of the alleged due process violation, while some constitutional deprivations amount to *per se* irreparable harm, *see, e.g., Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976) ("loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"), "the cases where courts have held that a constitutional deprivation amounts to an irreparable harm -are almost entirely restricted to cases involving alleged infringements of free speech, association, privacy, or other rights as to which temporary deprivation is viewed of such qualitative importance as to be irremediable by any subsequent relief.'" *Marano v. New York City Transit Authority*, 1993 WL 17434 at *3 (E.D.N.Y.) (quoting *Public Serv. Co. of New Hampshire v. Town of West Newbury*, 835 F.2d 380, 382 (1st Cir.1987)). Thus, plaintiffs' allegation of a due process deprivation, without more, does not establish irreparable harm. *Marano*,

1993 WL 17434 at *3; *see also Church of Scientology of California v. United States,* 920 F.2d 1481, 1488 (9th Cir.1990), *cert. denied,* 500 U.S. 952, 111 S.Ct. 2258, 114 L.Ed.2d 711 (1991).

As to the remaining assertions, plaintiffs overlook the general rule that "where monetary damages may provide adequate compensation, a preliminary injunction should not issue." *Jayaraj v. Scappini,* 66 F.3d 36, 39 (2d Cir.1995). Plaintiffs themselves concede that their losses are specifically quantifiable, noting that they anticipate total economic losses of over $30,000 from the loss of access to their truck. (Pl. Mem. in Support at 9). They do not assert, for example, that they have been unable to carry on their business. *Cf. New York State Trawlers Assoc. v. Jorling,* 764 F.Supp. 24, 26 (E.D.N.Y.) (noting that loss of profits severe enough to drive party out of business can constitute irreparable harm), *aff'd,* 940 F.2d 649 (2d Cir.1991).

The very measurability of the bulk of plaintiff's alleged losses—i.e., the difference between the amount they must pay to lease a truck and the monthly payments they were making on the repossessed truck—compels a finding that plaintiffs have not suffered damages that cannot adequately be compensated by a monetary award. *See, e.g., Lower Manhattan Loft Tenants v. New York City Loft Board,* 1997 WL 86404, *6 (S.D.N.Y.) (no irreparable harm where plaintiffs' only loss— the difference between replacement and depreciated value—was "purely monetary and readily quantifiable"). Thus, plaintiffs have failed to establish the element of irreparable harm.

### C. Plaintiffs Fail to Establish a Likelihood of Success on Their Federal Claim

 Additionally, plaintiffs fail to establish that they are likely to succeed on the merits of their § 1983 claim. Subject matter jurisdiction in this action is premised upon the existence of a federal question, see 28 U.S.C. § 1331, specifically plaintiffs' § 1983 claim that they were deprived of property in violation of the Fourteenth Amendment's due process guarantee. It is now axiomatic that "[a]lmost all of the constitutional protections of individual rights and liberties restrict only the actions of governmental entities." ROTUNDA, NOWAK & YOUNG, TREATISE ON CONSTITUTIONAL LAW: SUBSTANCE AND PROCEDURE § 14.4 (1986). The Fourteenth Amendment itself "erects no shield against merely private conduct, however discriminatory or wrongful." *Shelley v. Kraemer,* 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948); *see National Collegiate Athletic Ass'n v. Tarkanian,* 488 U.S. 179, 191, 109 S.Ct. 454, 461, 102 L.Ed.2d 469 (1988); *Rendell–Baker v. Kohn,* 457 U.S. 830, 837, 102 S.Ct. 2764, 2769, 73 L.Ed.2d 418 (1982). Specifically, the Fourteenth Amendment's due process guarantee "can be violated only by conduct that may be fairly characterized as 'state action.' " *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 924, 102 S.Ct. 2744, 2747, 73 L.Ed.2d 482 (1982). Moreover, the "under color of law" requirement of § 1983 is virtually identical to the state action requirement of the Fourteenth Amendment. *United States v. Price,* 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 1157 n. 7, 16 L.Ed.2d 267 (1966).

"At some point, as the police involvement becomes increasingly important, repossession by private individuals assumes the character of state action." *Mann v. Hillsborough County Sheriff's Office,* 946 F.Supp. 962, 967 (M.D.Fla.1996). In the present case, there is no allegation that any state official effectuated the repossession. Nonetheless, courts have held that state action may be found where

> the [police] officer assists in effectuating a repossession over the objection of a debtor or so intimidates him to refrain from exercising his legal right to resist a repossession. While mere acquiescence by the police to "stand by in case of trouble" is insufficient to convert a repossession into state action, police intervention and aid in the repossession does constitute state action.

*Harris v. City of Roseburg,* 664 F.2d 1121, 1127 (9th Cir.1981). *Roseburg* involved a police officer who was present at the repossession of a semi-tractor. *Id.* When the plaintiff came out of his house to protest the repossession, the police officer told him to "stand back or get away," and warned plain-

tiff that if he attempted to interfere with the repossession "any further or in any way that [plaintiff] was going straight to jail." *Id.* at 1127.

In the present case, Officer Durant made no such comment. Officer Durant did warn John Barrett that he might arrest him and put him in the squad car, but that warning was in response to John Barrett's striking of Smith. (Lynne Barrett Dep. at 21, 22; Durant Dep. at 19; Smith Dep. at 29). Durant gave no indication that he would arrest Smith for *lawfully* interfering with the repossession; to the contrary, the parties agree that Durant insisted he was only there to keep the peace, and could not get involved in this civil matter. (Smith Dep. at 41; John Barrett Dep. at 66; Durant Dep. at 16; Barrett Aff. ¶ 12). Thus, with the exception of his verbal intervention for the purpose of preventing physical violence (an obligation he had entirely independent of the repossession itself), Durant cannot be said to have assisted in effectuating the repossession.

*Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507 (5th Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980), like *Roseburg,* focused upon the presence of police officers at the scene of a repossession; the circumstances are analogous to those in the present case. In *Menchaca,* the police were called to the scene of the repossession in response to a complaint regarding loud and abusive language by plaintiff. *Id.* at 511. Upon arriving on the scene, plaintiff was warned that he would be arrested for breach of the peace if he continued using such language. *Id.* Additionally, the parties all testified that the police officers informed plaintiff that the repossession was a civil matter that did not concern the police. *Id.* The Fifth Circuit found that these circumstances failed to support sufficient intervention and aid in the repossession to constitute state action. *Id.* at 513.

Within this district, *Griffin v. Key Bank of New York,* 1996 WL 191975 (N.D.N.Y.) and *Wright v. National Bank of Stamford,* 600 F.Supp. 1289 (1985), *aff'd* 767 F.2d 909 (1985), also involved the issue of police presence at repossessions. In *Griffin,* the police officer arrived at the scene of the reposses-

sion at the request of the plaintiff's wife. *Griffin,* 1996 WL 191975 at *1. The plaintiff alleged that the police officer ordered plaintiff's wife to get out of the car, after which time the car was towed away. *Id.* In deciding whether the police officer was acting under color of law, Judge Pooler looked to whether "the police actively intervened in the possession." *Id.* at *5. Moreover, rather than concentrating on "which party called the police to the scene," Judge Pooler's analysis centered on "what the police did once they arrived." *Id.* at *5. Judge Pooler concluded that the Complaint could be construed to allege that the police officer *"departed from his peacekeeping role* and actively assisted in repossessing [the vehicle]," and thus denied defendants' Rule 12(b)(6) motion. *Id.* at *5. Conversely, in *Wright,* then-District Judge Miner found that the defendant deputy sheriffs were not acting under color of state law through their presence at the seizure of plaintiff's property. *Wright* at 1294. In *Wright,* the deputies arrived at the scene with members of the bank who were to take away the plaintiff's property. *Wright* at 1295. The bank members had requested the presence of the deputies allegedly in fear of possible violence or breach of the peace. *Wright* at 1295. Like Judge Pooler in *Griffin,* Judge Miner noted that "the appropriate inquiry must be directed to what, if anything, the deputies did once their involvement was procured." *Wright* at 1294. After conducting this inquiry, Judge Miner reached the conclusion that "there was a total lack of involvement by the deputy sheriffs. Other than their mere presence, they had absolutely no involvement in the repossession." *Id.* at 1295.

The ultimate inquiry in all of these cases is whether or not the defendant police officers were *actively involved* in the repossession. Active police intervention was defined in *Harris* as "when the officer assists in effectuating a repossession over the objection of a debtor or so intimidates a debtor as to cause him to refrain from exercising his legal right to resist a repossession." *Id.* at 1127. On the present facts, Officer Durant neither assisted in effectuating the repossession nor intimidated John Barrett so as to cause him to refrain from exercising his legal right to

resist the repossession. At no point did Officer Durant inform John that he did not have the right to interfere with the repossession (Durant Dep. at 15), as was the case in *Roseburg.* Officer Durant's verbal warning to John Barrett that he may arrest him was *only* in response to John's physical violence against Smith, which was entirely consistent with Durant's peacekeeping role. *See Menchaca,* 613 F.2d at 511 (no state action even where police warned plaintiff that he would be arrested if he continued using loud and abusive language); *cf. Griffin,* 1996 WL 191975 at *5 (finding state action where police officer affirmatively departed from peacekeeping role).

Nor did Officer Durant intimidate John Barrett so as to cause him to refrain from exercising his legal right to resist the repossession. Officer Durant neither suggested nor ordered that John give his keys to Smith. Although plaintiffs argue that John only gave the keys to Smith "because of the threat of arrest by Officer Durant (Barrett Aff. ¶ 15), that threat clearly related only to the possibility of a further assault on Smith.

In sum, the Court finds that because no state action is present, plaintiffs have failed to establish a likelihood of success on the merits of their § 1983 claim. Thus, plaintiff's motion for a preliminary injunction is denied. Moreover, since this conclusion raises serious questions as to this Court's subject matter jurisdiction over the action, and in light of the pending summary judgment motion by defendants Durant, Phillips and the Village of Malone, the Court will reserve decision on plaintiffs' motion for default judgment against defendant Mary Harwood.

## III. CONCLUSION

For all of the foregoing reasons, the Court concludes that plaintiffs have failed to establish either of the elements necessary for the award of preliminary injunctive relief. It is therefore

ORDERED, that plaintiffs' motion for a preliminary injunction is DENIED.

**IT IS SO ORDERED.**