SHEPHERD, Circuit Judge,
concurring.
Respectfully, I do not share the majority’s doubt as to the merits of Powell’s due process claim. I would instead hold that Powell has a reasonable probability of success on that claim. But I agree with the majority that Powell has failed to show irreparable harm, and I therefore concur in the judgment affirming the denial of preliminary injunctive relief.
I.
The demands of due process vary according to the nature of the challenged law. See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). More clarity is required of laws that “threaten[] to inhibit the exercise of constitutionally protected rights” and also of laws that impose “criminal penalties!),] because the consequences of imprecision are qualitatively [more] severe.” Id. at 498-99, 102 S.Ct. 1186.
According to the majority, the Fair policies “trigger[] no criminal liability” because “the only sanction for violating rules of the Fair is ejection from the Fair.” I disagree. Though the policies are not codified criminal ordinances as in Stahl v. City of St. Louis, 687 F.3d 1038 (8th Cir. 2012), they are at least quasi-criminal given that Powell would not have faced arrest but for first being ejected for violating the policies. Criminal consequences are therefore rooted in noncompliance with the policies and are not unearthed merely because Powell would have had to return to the Fair to be arrested. Further, civil and regulatory laws may be quasi-criminal for purposes of the vagueness doctrine without directly imposing criminal penalties. Vill. of Hoffman, 455 U.S. at 499, 499 n.16, 102 S.Ct. 1186 (labeling as “quasi-criminal” and applying a strict vagueness analysis to a licensing ordinance for businesses that sell products designed to be used with illegal drugs); see also Women’s Med. Ctr. of Nw. Hous. v. Bell, 248 F.3d 411, 422 (5th Cir. 2001) (applying a heightened vagueness test to a licensing regulation for medical offices that provide abortions because penalties such as substantial fines and license revocation render the law quasi-criminal); United States v. Clinical Leasing Serv., Inc., 925 F.2d 120, 122 (5th Cir. 1991) (applying a more exacting vagueness test to a federal civil statute requiring registration of manufacturers of controlled substances because the “prohibitory effect is quasi-criminal”). I would therefore hold that the Fair policies, though not outright threats to liberty, are at least quasi-criminal. Due process accordingly requires more precision of the Fair rules than of rules that do not threaten criminal punishment.
II.
Turning to the merits of the due process claim, I find no basis in the record or law to conclude that the Fair policies, unwritten and apparently non-existent prior to Powell’s trip to the Fair, satisfy the demands of due process.
“It is a basic principle of due process that an enactment is void for vagueness if *906 its prohibitions are not clearly defined.” Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). A law must give ordinary people fair notice of what conduct it forbids, and it must offer “explicit standards” for those who enforce it. Id It follows that, where lawmakers create an unwritten rule, the public must receive notice of the rule by some alternative means. Powell suggests that an unwritten rule is effectively divulged to the public when it is “made explicit by well-established practice,” i.e., the rule has a history of consistent and uniform application. He relies on Families Achieving Independence & Respect v. Nebraska Department of Social Services, where the court stated, “So long as a policy is made explicit by Veil-established practice,’ [t]he fact that a policy is not committed to writing does not of itself constitute a First Amendment violation.” 111 F.3d 1408, 1415 (8th Cir. 1997) (en banc) (alteration in original) (citation omitted) (quoting Lebron v. Nat’l R.R. Passenger Corp., 69 F.3d 650, 658 (2d Cir. 1995)).
The majority rejects Powell’s position, stating that the quoted language in FAIR “discusses whether an unwritten rule violates the First Amendment,” not due process. But in Powell I, our court relied on the same quoted language to remand for consideration of whether the unwritten policies violate Powell’s due process rights. Powell v. Noble, 798 F.3d 690, 703-04 (8th Cir. 2015). Moreover, the quoted sentence in FAIR was part of a broader discussion of the vagueness doctrine, a concept that is as entrenched (if not more) in due process as it is in the First Amendment. See Connally v. Gen. Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926) (“[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.”). Thus, while FAIR uttered its “well-established practice” requirement in the context of a First Amendment vagueness challenge, it did not foreclose imposing the same requirement when a party brings a vagueness challenge on the grounds of due process.
The disagreement over FAIR is largely academic; in my view, the record shows no previous application of the policies that would notify Fairgoers in advance of the Fair’s unwritten rules. The only evidence on this issue is the testimony of Iowa State Fair Patrol Officer Rhonda Hummel, who participated in ejecting Powell from the Fairgrounds. When asked whether Powell was the first individual to be removed from the area, Officer Hummel replied, “No. We’ve had other incidents where we’ve asked people to go across the street [because they were impeding pedestrian traffic].” R. Doc. 23, at 20-21. Hummel’s faint account, without more, does not show that the pedestrian traffic rule has been applied in any manner giving fair notice of its prohibitions.
The record in fact suggests that the Fair’s rules on traffic and signs were broadcast during this litigation in an attempt to retroactively validate Appellees’ treatment of Powell. In apprehending and ejecting Powell, officials did not identify either of the relevant policies, despite Powell’s repeated requests for an explanation as to the nature of his infraction. In the first incident, which the officer involved described as lasting “no more than half a minute,” Powell was merely told that he must leave the Fair’s property. R. Doc. 12-2, at 2-3. Similarly, the officer involved in the second incident stated, “I just told him that he needed to move on off the [Fair]grounds because being inside the area where he was at, he was on the [Fairgrounds.” R. Doc. 23, at 34. This testimony indicates that, contrary to Ap-pellees’ position, officials were not know *907 ingly enforcing rules about traffic flow and signs on sticks when they ejected Powell. Indeed, one official testified that there was no concern about the pole attached to Powell’s sign when he was ejected. R. Doc. 23, at 35.
The lack of articulated prior application of these policies, as well as Appellees’ suspect attempt to validate Powell’s removal after the fact, leads me to conclude that Powell did not have fair notice of the unwritten policies as required by due process. The record also does not show that Appellees have adopted any “explicit standards” to assure fair enforcement of their policies. Grayned, 408 U.S. at 108, 92 S.Ct. 2294. I would therefore hold that Powell has a reasonable probability of success on his due process claim.
III.
Though I do not join the majority as to the previous matter, I agree that Powell has not shown irreparable harm. “[T]he absence of a finding of irreparable injury is alone sufficient ground for vacating the preliminary injunction.” Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 n.9 (8th Cir. 1981) (en banc). To establish irreparable harm, Powell must show that “the harm is certain and great and of such imminence that there is a clear and present need for equitable relief.” E.g., Roudachevski v. All-Am. Care Ctrs., Inc., 648 F.3d 701, 706 (8th Cir. 2011) (internal quotation marks omitted).
Powell would suffer irreparable harm if the Fair policies were likely to chill protected speech. E.g., Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality opinion). They are not, however, because we have already concluded that the Fair policies probably do not threaten Powell’s First Amendment rights. Powell I, 798 F.3d at 702. Powell argues that we should not allow our disposition of his First Amendment claim to impact our approach to his due process claim because the claims are independent. While free speech and due process are, indeed, separate constitutional guarantees, in this case the two are inextricably linked by Powell’s own assertion that the alleged due process violation chills his speech. Thus, to the extent that Powell raises chilled speech as an injury resulting from the loss of due process, there is no basis for finding irreparable harm.
In his brief, Powell also proposes that the loss of due process, like the loss of a First Amendment freedom, is itself sufficient to establish irreparable harm. Notably, Powell cites no authority supporting his interpretation, likely because most courts to consider the issue conclude the opposite. Pub. Serv. Co. of N.H. v. Town of W. Newbury, 835 F.2d 380, 382 (1st Cir. 1987) (“The alleged denial of procedural due process, without more, does not automatically trigger ... a finding [of irreparable injury].”); Bauman v. Twp. of Tittabawassee, No. 14-cv-12841, 2014 WL 5499285, at *4 (E.D. Mich. Oct. 30, 2014) (“[T]he [c]ourt is not aware off ] any case where the threat of a [sic] violating a substantive due process right was considered irreparable harm....”); Barrett v. Harwood, 967 F.Supp. 744, 746 (N.D.N.Y. 1997) (“[T]he cases where courts have held that a constitutional deprivation amounts to an irreparable harm are almost entirely restricted to cases involving alleged infringements of free speech, association, privacy, or other rights as to which temporary deprivation is viewed of such qualitative importance as to be irremediable by any subsequent relief.”) (internal quotation marks omitted). Accordingly, I conclude that Powell’s alleged due process violation alone cannot support a finding of irreparable harm, and Powell is therefore not entitled to a preliminary injunction.
*908 IV.
In sum, I respectfully disagree with the majority’s conclusion as to the merits of the due process claim and would instead hold that Powell has a reasonable probability of success on that claim. I nonetheless concur in the judgment to affirm the disr trict court on the ground that Powell will not suffer irreparable harm in the absence of injunctive relief.